# No. 04-70050

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

**UNITED STATES OF AMERICA,**
*Respondent-Appellee,*

v.

**ORLANDO CORDIA HALL,**
*Petitioner-Appellant.*

U.S. COURT OF APPEALS

**FILED**

JAN 1 6 2006

CHARLES R. FULBRUGE III
CLERK

---

## REPLY IN SUPPORT OF
## APPLICATION FOR CERTIFICATE OF APPEALABILITY

---

Petitioner-Appellant ORLANDO CORDIA HALL ("Hall") replies to Respondent-Appellee's Opposition to his Application for a Certificate of Appealability ("Opp."). Hall does not waive or abandon any of the factual or legal arguments advanced in his COA application, whether or not he expressly repeats them or addresses Respondent-Appellee's contentions respecting them.

Reply in Support of COA
United States v. Hall, No. 04-70050
Page 1 of 29

**I. Respondent-Appellee's argument rests on factual allegations that are vigorously disputed, cannot be reconciled with the record, and have never been resolved in a hearing. A hearing is mandatory.**

Respondent-Appellee ("Respondent") contends that Hall is not entitled to a COA to determine whether the District Court erred in denying an evidentiary hearing on the vast majority of Hall's claims, including his well-supported challenge to trial counsels' ineffective assistance in the penalty phase ("IAC claim"). For the following reasons, Respondent is mistaken.

First, Respondent – citing no authority – argues that whether the District Court erred in denying a hearing is "not cognizable in an application for COA, which asks whether a defendant can [show] that he was denied constitutional rights," because "[a] defendant does not have a constitutional right to an evidentiary hearing . . . ." Opp. 46 n.26 (citing 18 U.S.C. § 2253). As an initial matter, the denial of an evidentiary hearing certainly can implicate a petitioner's constitutional rights. The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quotation omitted)); *see also* Gardner v. Florida, 430 U.S. 349, 362 (1977) (defendant denied due process when

"the death sentence was imposed ... on the basis of information which he had no opportunity to deny or explain."). Contrary to these basic demands of due process, Hall was denied any meaningful opportunity to be heard on the majority of his claims, and the District Court resolved those claims against him without determining the underlying historical facts. *See infra*.

Moreover, this Court has repeatedly reviewed a district court's refusal to grant an evidentiary hearing in a post-conviction proceeding as part of a subsequent COA application. *See, e.g.*, Smith v. Mississippi Dept. of Corrections, 153 Fed. Appx. 328 (5th Cir. 2005) (unpublished; attached as Appendix 1) (noting that the Court had previously granted a COA "on the issues whether the district court abused its discretion by failing to hold an evidentiary hearing to resolve conflicting affidavits concerning" two of petitioner's claims); United States v. McBrayer, 111 Fed. Appx. 723 (5th Cir. 2004) (unpublished, attached as Appendix 2) (determining, in granting COA on an IAC claim, that a remand was necessary for a hearing on that issue); United States v. McMillen, 96 Fed. Appx. 219 (5th Cir. 2004) (unpublished, attached as Appendix 3) (same); United States v. Noble, 73 Fed. Appx. 669 (5th Cir. 2003) (unpublished, attached as Appendix 4) (same); United States v. Arguellas, 78 Fed. Appx. 984 (5th Cir. 2003) (unpublished;

attached as Appendix 4 to COA Application) (remanding for hearing and noting that the Court earlier had granted COA "on the issue whether the district court abused its discretion in not granting a live evidentiary hearing" to resolve Arguellas' claims).[1] Clearly, Hall's challenge to the District Court's denial of an evidentiary hearing is cognizable here.

Respondent acknowledges that, under 28 U.S.C. § 2255, an evidentiary hearing is **mandatory** "[u]nless the motion, files, or record of the case show conclusively that no relief is appropriate . . . ." Opp. 46 (citations omitted). As the language of Section 2255 clearly indicates,[2] "[c]ontested facts issues [in a 28 U.S.C. § 2255 case] ordinarily may not be decided on affidavits alone, unless the

---

[1] Other courts treat the question of whether a district court properly denied a hearing on an IAC claim as subsumed by a grant of COA on the IAC claim itself. *See, e.g.*, United States v. McKoy, 410 F.3d 124, 131 (3rd Cir. 2005) (noting that COA was granted on McKoy's IAC claim, and then characterizing as "the only issue before us" whether the district court abused its discretion in not granting a hearing on that claim). Following the Third Circuit's lead, it appears that this Court could simultaneously grant COA on Hall's IAC claim and hold, without requiring further briefing, that the appropriate disposition is to remand for the evidentiary hearing the District Court erred in denying.

[2] Section 2255 provides, in pertinent part, that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court *shall* cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." (Emphasis supplied). *See* Machibroda v. United States, 368 U.S. 487 (1962) (remanding for evidentiary hearing on petitioner's claim that his guilty plea was involuntary, despite Court's conclusion that the claim was not far from being "marginal," because "the issues raised by the motion were [not] conclusively determined either by the motion itself or by the 'files and records' in the trial court).

Reply in Support of COA
United States v. Hall, No. 04-70050
Page 4 of 29

affidavits are supported by other evidence in the record." <u>Noble</u>, 73 Fed. Appx., at 670 (quoting <u>United States v. Hughes</u>, 635 F.2d 449, 451 (5th Cir. Unit B 1981)).[3]

Hall has documented numerous contested issues of fact that precluded the District Court from resolving Hall's claims without first conducting an evidentiary hearing.[4] *See, e.g.,* ROA 1371-74 (Defendant Orlando Hall's Motion for Evidentiary Hearing and Brief in Support, listing more than a dozen disputed issues of fact). Like the court below, however, Respondent assumes the truth of its own factual allegations (including trial counsels' affidavits submitted in support of the Government's 2255 response) and the validity of the District Court's findings and conclusions, while ignoring the wide array of contrary evidence produced by

---

[3] *See also* <u>McBrayer</u>, 111 Fed. Appx., at 724 (remanding for evidentiary hearing on IAC claim where "[t]he affidavits presented by McBrayer, those presented by her attorneys, and the record as a whole show that there are contested facts" regarding McBrayer's claim); <u>Arguellas</u>, 78 Fed. Appx., at 987 ("Because the content of the discussions between counsel and Arguellas [are] not in the record ... and the district court had no occasion to observe Arguellas' credibility during trial or otherwise, a live evidentiary hearing is necessary to [resolve a dispute] as to the content of those conversations").

[4] The District Court asserted that no hearing was necessary because "with regard to the claims for which Hall has submitted additional evidence, the Court has decided those claims based on information that remains uncontested, by assuming that what Hall alleges is true, or based on legal, not factual, bases." ROA 1601; *see* Opp. 47. This contention is impossible to square with the District Court's Order, which repeatedly credits the Government's version of disputed facts (regarding, *e.g.,* whether counsel conducted a reasonably thorough investigation) and ignores Mr. Hall's contrary evidence.

Hall that mandated a hearing.[5] Hall identifies representative examples of such contested facts below. This list is not comprehensive, but illustrates the degree to which the District Court's denial of Hall's 2255 Motion was based on improperly crediting Respondent's disputed factual allegations, rather than hearing evidence and making genuine credibility determinations:

- The District Court credited trial counsels' affidavits (proffered by Respondent), despite numerous instances in which **counsels' assertions are directly contradicted by the record**. For instance, Michael Ware declared *inter alia* that he made a tactical decision not to call Rev. D.L. Hegler as a mitigation witness based on a memorandum Ware received October 22, 1995, indicating that Hegler had made "damaging" statements about Hall in an interview. *See* R. 40:1108-10. As Hall pointed out in his Reply, however, Ware's own notes from trial demonstrate Ware clearly intended to call Rev. Hegler as a witness well *after* Ware had received the supposedly damning memorandum. Moreover, telephone records corroborate Rev. Hegler's statement that trial counsel summoned him on the eve of the punishment hearing to come to Fort Worth, only to fail to call him as a witness for reasons that have never been explained. *See* R. 41:1313-17.

---

[5] For example, Respondent maintains that the District Court properly decided to deny a hearing based on "the *assumptions* it employed in reaching its findings and conclusions . . . ." Opp. 47 (emphasis supplied). This contention – that the District Court was entitled to deny a hearing based on its *assumptions* about vigorously disputed matters of historical fact – simply begs the question.

■ Respondent insists that the District Court properly concluded that trial counsel conducted "'a reasonably substantial and independent investigation into potential mitigating circumstances'" in part because "Hall's counsel had the benefit of the investigative efforts expended by the attorney initially appointed by the court to represent Hall," as reflected by the 19-page questionnaire that initial counsel had Hall complete and a few superficial interviews initial counsel conducted in Hall's hometown.[6] Opp. 15 (quoting District Court's Order, at p. 24). **The allegations that Hall's attorneys *in fact* relied on their predecessors' work, and that such reliance would have been reasonable in any event, however, are directly contradicted by sworn evidence presented by Hall.** Hall's detailed contrary evidence demonstrates that (1) trial counsel *did not* make investigative decisions based on their predecessors' work, *see* Appendix to 2255 Reply (Dkt. # 1102) at 3-4 (declaration of Tena S. Francis); (2) any such reliance would have contrary to prevailing professional norms, *see* id. at 34-42 (declaration of Michael E. Tigar); and (3) initial counsels' investigation, in fact, pointed to areas that required further investigation that trial counsel then ignored, *see* id. at 5-6 (Francis), 26-32 (declaration of Jill Miller), 41-44 (Tigar).

■ In defending the District Court's conclusion that trial counsel were not ineffective in failing to have Hall evaluated by a neuropsychologist, Respondent contends that trial counsel "had seen no indication of neurological dysfunction or any cognitive problems." Opp. 17.[7] **This assertion is contradicted by sworn**

---

[6]*Cf., e.g.,* Summerlin v. Schriro, 427 F.3d 623 (9th Cir. 2005) (*en banc*) (counsel performed deficiently in relying for mitigation purposes on results of mental health evaluation authorized by prior counsel for a different purpose).

[7] *See also* Opp. 21, 21 n.10 (disputing allegation that defense counsel should have recognized the need for a neuropsychological examination, asserting that they "observed no obvious signs of neurological dysfunction in Hall").

**evidence submitted by Hall,** documenting that counsel were advised by Tena Francis, their belatedly hired mitigation specialist, that she had uncovered information (including, *inter alia*, Hall's family history, childhood development and poor school performance) indicating a neuropsychological evaluation was called for. *See* Appendix to 2255 Reply (Dkt. # 1102) at 15-16; *see also* <u>id</u>. at 26, 43-44 (opinion of Michael E. Tigar that the information of which counsel were aware "should have sent up warning signals [because it] dictated a thorough investigation").

■ Likewise, Respondent argues that the District Court properly credited its allegation that trial counsel, "for strategic reasons, elected not to go forward with the testimony from . . . neuropsychologist Dr. Randy Price." Opp. 20. **This "finding" is directly refuted by an affidavit submitted by Hall.** In that affidavit, attorney Kevin McNally, who consulted with trial counsel, details how counsel learned that Dr. Price would be unavailable to evaluate Hall and how counsel reacted to that news. McNally's affidavit vividly illustrates that trial counsels' failure to obtain and present neuropsychological mitigating evidence about Hall resulted from their failure to seek the assistance of another expert once they belatedly learned that Dr. Price was unavailable to evaluate Hall – *an evaluation they had already determined was appropriate and necessary to preparing Hall's defense* (contrary to Respondent's suggestion, *see supra*, that trial counsel had seen nothing warranting such an evaluation). Finally, contrary to Respondent's argument (Opp. 20 n.9), since Dr. Price never evaluated Hall, counsel could not reasonably have concluded that a neuropsychological evaluation could not help the defense. *See* Appendix to 2255 Reply (Dkt. # 1102) at 49 (Tigar) (unreasonable to assume from Dr. Price's reaction that "another appropriately qualified expert who *had* actually evaluated [Hall would not] be able to provide truthful, supportive testimony to the defense").

The District Court, in short, simply adopted Respondent's *allegations*, in the face of extensive evidence submitted by Hall directly contrary to Respondent's position. The express language of Section 2255 forbids a district court from resolving such factual disputes without first conducting an evidentiary hearing at which it can assess the strength and credibility of the parties' conflicting evidence. Because reasonable jurists could conclude that the District Court abused its discretion in denying an evidentiary hearing on all but one of Hall's claims[8] – and in particular, denying a hearing on his penalty-phase IAC claim – a COA should issue.

In the final analysis, this Court cannot uphold Hall's death sentence without first insisting that the District Court create a record that will enable this Court to discharge its duty to give appropriately searching appellate review to Hall's penalty-phase IAC claim. As this Court has pointed out, "the Supreme Court's recent emphasis on ineffective counsel claims indicates that we must be accurate and use care in reviewing [such a] claim." Guy v. Cockrell, 343 F.3d 348, 354 (5th

---

[8] *See, e.g.*, United States v. McCoy, 410 F.3d 124, 131-32 (3rd Cir. 2005) (district court may not deny a hearing "when the files and records of the case are inconclusive on the issue of whether movant is entitled to relief;" district court "misstated the appropriate standard" when it denied a hearing after finding McCoy had shown "no prejudice" from counsel's claimed deficient performance; instead, an evidentiary hearing was mandatory unless the record "conclusively showed" that McCoy had *not* been prejudiced).

Cir. 2003); *see also* id. ("The Supreme Court requires a sufficient record for a reviewing court to rule on ineffective assistance of counsel claims like this one," citing <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 487 (2000)). The record in this case at present is not "sufficient" for that purpose, and only action by this Court can correct that deficiency.

**II.  <u>Smith v. Dretke</u>, 422 F.3d 269 (5th Cir. 2005), rejects nearly every rationale asserted by Respondent here for not granting an appeal on the merits of Hall's IAC claim.**

In <u>Smith v. Dretke</u>, 422 F.3d 269 (5th Cir. 2005), this Court granted a COA on the merits of a penalty-phase IAC claim in a capital case. The Court's well-reasoned opinion in <u>Smith</u> – which considers and rejects many of the same arguments that underlie the District Court's Order and Respondent's Opposition – illustrates why Hall's IAC claim likewise merits a COA.

<u>Smith</u> makes plain, first, that a reviewing court may not conclude that counsel performed adequately simply because they conducted *some* investigation into the defendant's background. The state court credited trial counsels' affidavits saying they "interviewed many of Smith's family members and childhood acquaintances." <u>Smith</u>, 422 F.3d at 277. This Court, relying on both <u>Wiggins v. Smith</u>, 539 U.S. 510 (2003), and <u>Rompilla v. Beard</u>, 125 S. Ct. 2456 (2005),

emphasized that "the question [wa]s whether the investigation conducted could be considered adequate *in light of professional norms.*" Smith, 422 F.3d at 280 (emphasis added).[9] Because prevailing professional norms required counsel to conduct a wide-ranging and thorough inquiry into the defendant's "medical history, educational history, employment history, family and social history, prior adult and juvenile correctional experience, and religious and cultural influences," even "extensively interviewing" a few witnesses, such as the defendant and his family, may not have provided an adequate factual basis for making reasonable judgments about how to conduct the penalty phase. Smith, 422 F.3d at 279-80 (citing Wiggins, the ABA Guidelines, and Rompilla). The District Court here (as set out more fully *infra*), like the state court in Smith, simply endorsed trial counsels' claims about the extent of their investigation without ever evaluating their actions in light of prevailing professional norms. Here, as in Smith, that failure supports a COA.[10]

---

[9] Smith was tried in 1990, five years before Hall. Smith, 422 F.3d at 272.

[10] This Court took the same approach in Alexander v. Dretke, 152 Fed. Appx. 387 (5th Cir. 2005), granting COA on a penalty-phase IAC claim where it was conceded that "counsel conducted considerable investigation designed to discover mitigating evidence and produced substantial evidence during the punishment phase," but it was disputed whether the extent and depth of counsel's investigation met prevailing professional norms. Id. at 391 (citing Wiggins). Alexander was tried in 1989, six years before Hall. Id. at 389.

Smith also forecloses the argument that counsel could reasonably choose to limit their presentation of a particular area of mitigating evidence, such as the defendant's prior successful adjustment to incarceration, without first conducting a searching investigation to find all available evidence. Smith's trial counsel presented one witness to describe Smith's good behavior while incarcerated. Smith, 422 F.3d at 278. Further investigation, however, would have revealed that "during his several stays in the Texas prison system," Smith had "a near spotless disciplinary record." Id. The prosecution argued that since trial counsel "did … adduce direct evidence of Smith's good behavior while incarcerated," reasonable jurists could not find counsel ineffective for not presenting "prison records that contained duplicate information." Id. This Court rejected that notion, saying that counsels' decision to limit their presentation on this important subject to a single witness was unreasonable unless it was preceded by an adequate – which is to say complete – investigation. Id .at 279 (citing Wiggins, 539 U.S. at 521-22).

The same is true here: the District Court and Respondent both emphasize that trial counsel "presented testimony from [a jailer] that there were no records of any disciplinary problems with Hall while he was housed there," *see* Order at 32 and Opp. 25 n.17, while ignoring the fact that a reasonably thorough investigation

that would have produced other, much stronger evidence to counter the prosecution's claim that Hall would be dangerous in prison if his life were spared. *See* Exhibits to Second Amended 2255 Motion (Dkt. # 1071) at Exhibits 34-38. Here, as in <u>Smith</u>, reasonable jurists could dispute whether to defer to a "strategic" choice made after an unreasonably limited investigation.

<u>Smith</u> also suggests skepticism about crediting trial counsels' *post hoc* claims of "strategic" justification that defy the trial record. In <u>Smith</u>, trial counsel said they chose not to fully develop information about Smith's turbulent background in order to present him as the product of a "stable family ... [that was] intact and functional." <u>Smith</u>, 422 F.3d at 281. As this Court pointed out, however, counsel's claim was "contrary to the actual testimony presented at sentencing," since witnesses had in fact testified that Smith's upbringing was marked by poverty and violence. <u>Id</u>. Such a variance between counsel's affidavit and the record supported COA.

The same is true here. Respondent and the District Court make much of trial counsels' claim (in their affidavits submitted by Respondent) that they decided not to investigate, develop, and present Hall's background of deprivation and abuse because "the conservative jury Hall would pull in North Texas was less likely [to]

accept 'excuse defenses.'"[11] Opp. 14. As in <u>Smith</u>, counsels' claim is "contrary to the actual testimony presented at sentencing," which plainly portrayed – however partially and ineffectually – the violence that marked the Hall home. *See* COA Application at 13-14. Here, as in <u>Smith</u>, the gap between counsels' affidavits and the record suggests a COA should issue.[12]

---

[11] When mitigation specialist Tena Francis joined the defense team two weeks before trial, she learned that Hall's counsel had already decided – without conducting the type of investigation mandated by <u>Wiggins</u> – to focus on the statutory mitigating factor that "equally culpable co-defendants" would not receive the death penalty. *See* Exhibits to Second Amended 2255 Motion (Dkt. # 1070), Exhibit 7 at 38. Making such a decision before conducting an investigation that complied with prevailing professional norms constituted deficient performance. <u>Gersten v. Senkowski</u>, 426 F.3d 588, 610 (2nd Cir. 2005) (counsel deficient for settling on defensive theory before conducting complete investigation into other available lines of defense).

[12] Furthermore, **Hall's trial counsel has relied on precisely this type of mitigating evidence to persuade conservative North Texas jurors in other capital cases.** *See* Vaughn, "Man Who Killed Pool Hall Manager Given Life Sentence: Attorneys Argued He Didn't Deserve To Die Because Of Mitigating Circumstances," FORT WORTH STAR-TELEGRAM, December 12, 2000 (recounting how Hall's trial counsel Ware presented mitigating evidence that the defendant's "mother was a drug addict who was in and out of prison," that "his father was never around," that he was "raised on the streets" in a "dangerous" neighborhood, and had "a very dysfunctional family life.").

The fact that other claims in Ware's affidavit cannot be reconciled with the sworn accounts of disinterested parties (*e.g.*, attorney Kevin McNally's affidavit disputing Ware's claim that the defense team never really wanted to have Hall make an unsworn statement of remorse in allocution, *see* Appendix to 2255 Reply (Dkt. # 1102) at 20, raises troubling questions about Ware's candor. Traditionally, a fact-finder is entitled to reject a witness' entire testimony if the witness makes a single statement the fact-finder conclusively discredits. *See, e.g.*, <u>The Santissima Trinidad</u>, 20 U.S. (7 Wheat) 283, 338-40 (1822) (Story, J.) (where a witness "speaks to a fact in respect to which he cannot be presumed liable to mistake" and the fact-finder does not credit his testimony, "it is extremely difficult to exempt [the witness] from the charge of deliberate falsehood; and Courts of justice, under such circumstances, are bound … to apply the maxim *falsus in uno, falsus in omnibus*").

Reply in Support of COA
<u>United States v. Hall</u>, No. 04-70050
Page 14 of 29

Smith also treats the sworn affidavits from members of Smith's family, "contradict[ing the] assertion that [trial counsel] extensively interviewed Smith's family members," as supporting COA. Smith, 422 F.3d at 282. Here, as in Smith, Hall has proffered affidavits from readily identifiable mitigation witnesses who "were not contacted by trial counsel" and "would have assisted in [Hall's] defense if allowed." Smith, 422 F.3d at 282; see, e.g., Exhibits to Second Amended 2255 Motion (Dkt. # 1070) at 244 (Hall's father); 248 (Rev. Jerry Ross); 251 (Gracie Ross); 254 (Jerline Hill); 258 (Jamie Garrett). As in Smith, this fact supports a COA.

Finally, Smith – and other recent cases from this Court – conclusively reject Respondent's insistent complaint that an IAC claim based on defense counsel's "fail[ure] to offer more evidence" cannot prevail. Opp. 25 n.17; id. at 10 (Hall "faults ... counsel for failing to present more evidence of a certain type, rather than pointing to a dearth of evidence on a particular mitigating factor").[13] In Smith,

---

[13] As an initial matter, this argument fails because **Hall *did* identify types of mitigating evidence that were completely absent from counsels' penalty-phase presentation.** These mitigating factors included, but were not limited to, the fact that Hall himself was physically abused as a child; the fact that Hall originally dealt drugs because he had to support himself and his brothers after they were abandoned to live on their own by their mother; and the fact that Hall once saved his nephew from drowning. *See generally* COA Application at 13-17. Thus, even if Respondent's view of the law were correct, Hall would still be entitled to a COA.

even though counsel presented mitigating testimony "that Smith came from a disadvantaged background" and had used cocaine heavily around the time of the crime, 422 F.3d at 283, the Court granted a COA because reasonable counsel might have done more to develop these facts in greater and more persuasive detail, including through the use of experts. Id. at 283-84.

Smith is no anomaly. In Tenny v. Dretke, 416 F.3d 404 (5th Cir. 2005), trial counsel performed deficiently in "fail[ing] to elicit important testimony from witnesses ... who were called [to testify]." Tenny, 416 F.3d at 408-09. In addition, even though trial counsel presented evidence supporting Tenny's self-defense claim, additional credible witnesses were available and reasonable counsel would have used them. Id. Because the full story "would have left the jury with a markedly different landscape," this Court found counsel's omissions prejudicial. Id. at 411. Miller v. Dretke, 420 F.3d 356 (5th Cir. 2005), too, rebuts Respondent's view. In Miller, this Court found counsel ineffective for failing to fully develop and present evidence of the defendant's mental problems at sentencing, even though counsel presented some evidence about them at trial. Miller, 420 F.3d at 361-62. The Court rejected the contention that such evidence was necessarily cumulative. Id. at 364. Thus, in three recent cases – Smith, Tenny, and Miller –

this Court has turned aside the argument Respondent advances here in opposing COA.

III.  **In rejecting Hall's IAC claim, the District Court never assessed trial counsels' performance in light of the prevailing standard of practice, as set forth in the ABA Guidelines and elaborated by Hall's experts.**

The evidence below makes clear that trial counsels' performance departed in every particular from the requirements of the AMERICAN BAR ASSOCIATION GUIDELINES FOR THE APPOINTMENT AND PERFORMANCE OF DEFENSE COUNSEL IN DEATH PENALTY CASES ("ABA Guidelines"). As demonstrated *infra*, courts now universally recognize the Supreme Court's express direction to treat compliance with the ABA Guidelines as a key measure of whether counsel's performance in a capital case met the prevailing standard of practice. Neither the District Court nor Respondent, in characterizing counsels' performance as constitutionally tolerable, ever mentions what the prevailing standard of practice *actually demanded* of counsel, or defends counsels' performance in light of any such standard. Because Supreme Court precedent would require reasonable jurists to disavow that approach to resolving Hall's IAC claim, a COA should issue.

The ABA Guidelines reflect the relevant standard of practice against which the performance of counsel in a capital case must be measured. <u>Smith</u>, 422 F.3d at

279 (noting that <u>Wiggins</u> found counsel's investigation deficient by comparing it to what the ABA Guidelines required); <u>Harries v. Bell</u>, 417 F.3d 631, 638 (6th Cir. 2005) (acknowledging that the "Supreme Court has recognized [the ABA Guidelines] as reflecting prevailing professional norms" in requiring counsel to make "efforts to discover *all reasonably available* mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor") (citation omitted); <u>Summerlin v. Schriro</u>, 427 F.3d 623, 638 (9th Cir. 2005) (relying on ABA Guidelines in finding deficient performance at penalty phase); <u>Earp v. Ornoski</u>, __ F.3d___, 2005 WL 3440810 (9th Cir. 2005) at *10 (same, in concluding that evidentiary hearing on IAC claim was necessary).

The District Court completely failed to acknowledge or apply the prevailing standard of practice (as reflected by, *e.g.*, the ABA Guidelines) in assessing whether counsels' performance was deficient. Such an approach inevitably results in an arbitrary judgment about the performance of counsel. "In evaluating whether counsels' performance fell below an objective standard of reasonableness, it is necessary to first identify the relevant professional standard of care." <u>Nooner v. Norris</u>, 402 F.3d 801, 812 (8th Cir. 2005) (Lay, C.J., concurring in part and dissenting in part). Applying the ABA Guidelines does not inevitably lead to a

finding of deficient performance. *See, e.g.*, <u>Clark v. Mitchell</u>, 425 F.3d 270, 285 n.5 (6th Cir. 2005) (rejecting IAC claim in part because counsel complied with ABA Guidelines in preparing penalty phase). It does, however, give meaningful content to the factual inquiry into whether counsels' performance met the prevailing standard of practice for defending a capital case. <u>Hamblin v. Mitchell</u>, 354 F.3d 482, 486 (6th Cir. 2003) ("<u>Wiggins</u> ... stands for the proposition that the ABA standards for counsel in death penalty cases provide the guiding rules and standards to be used in defining the 'prevailing professional norms' in ineffective assistance cases. This principle adds clarity, detail and content to the more generalized and indefinite 20-year-old language of <u>Strickland</u>"). The District Court's failure to consider counsels' errors and omissions in light of the prevailing standard of practice, as reflected in the ABA Guidelines, warrants a COA.

**IV. Respondent, like the District Court, fundamentally misapprehends the relevance of mitigating evidence to the capital sentencing decision, and thus unfairly minimizes the likelihood of prejudice from counsels' failure to meet prevailing professional norms.**

Respondent argues that Hall cannot show prejudice from counsels' ineffective assistance at the penalty phase because of "the horrific nature and senselessness of the offense," as well as what Respondent characterizes as Hall's

"direct and supervisory participation in it." Opp. 10. No one disputes that Lisa Rene's murder was shocking and deeply tragic. But Respondent's mechanistic view of the weighing process in which Hall's jury was required to engage at the penalty phase is erroneous, and blinds Respondent to the very real likelihood that a jury exposed to the full range of available mitigating evidence in this case would have spared Hall's life.

The Third Circuit has recently described the nature of the jury's penalty phase judgment:

> The existence of a penalty phase in capital trials makes such trials radically different from ordinary criminal trials. ... [The penalty phase focuses on] the convicted defendant's worthiness to live. The guilt trial establishes the elements of the capital crime. The penalty trial is a trial for life. It is a trial for life in the sense that the defendant's life is at stake, and it is a trial about life, because a central issue is the meaning and value of the defendant's life.

> The penalty phase focuses not on absolving the defendant from guilt, but rather on the production of evidence to make the case for life. The purpose of the investigation is to find witnesses *to help humanize* the defendant, given that the jury has found him guilty of a capital offense.

Marshall v. Cathel, 428 F.3d 452, 467-68 (3rd Cir. 2005) (internal citations and quotation marks omitted; emphasis in original). The Ninth Circuit has similarly observed that

[i]n the penalty phase of a capital trial, it is imperative that all relevant mitigating information be unearthed for consideration . . . This is necessary because the determination of whether to impose a death sentence is not an ordinary legal determination which turns on the establishment of hard facts. The statutory factors give the jury broad latitude to consider amorphous human factors to weigh the worth of one's life against his culpability.

Daniels v. Woodford, 428 F.3d 1181, 1209 (9th Cir. 2005) (internal citations and quotation marks omitted). The insight shared by both courts is that the decision whether to spare a capital defendant's life is not a simple calculus of comparing the "weight" of facts about his background and character to the horrible facts of the crime, much less considering whether (as Respondent urges, *see* Opp. 10) his mitigating evidence somehow "eclipses" the crime. The question is whether jurors can reach some understanding of the origins of the defendant's criminal behavior, and a belief in the affirmative value of his life, that together persuade them that a sentence less than death is an acceptable punishment.

That is why federal juries regularly impose life sentences in cases involving highly aggravated facts. [14] It cannot be the case, as Respondent would have it, that

---

[14] *See* COA Application at 46 n.56.

such juries find that the defendant's life story "eclipses" the horror of his crime.[15]

And that is why courts find counsel's failure to develop and present significant mitigating evidence prejudicial even where the facts of the crime are "egregious." Earp v. Ornoski, __ F.3d__, 2005 WL 3440810 (9th Cir. 2005) at *11 (granting hearing on penalty-phase IAC claim in case of sexual assault and bludgeoning of a child); *see also, e.g.,* Smith v. Stewart, 189 F.3d 1004, 1013 (9th Cir. 1999) (granting relief for penalty-phase IAC in case involving separate torture-murders of two teenage girls by individual with prior rape conviction; "reject[ing] the argument that heinous crimes make mitigating evidence irrelevant," especially where the statutory scheme gives the sentencer "broad latitude to weigh the worth of the defendant's life"); Smith, 422 F.3d at 270-272 (granting COA on penalty-phase IAC claim in case involving crack-addicted defendant who committed two separate capital murders a week apart, apparently to get money to buy drugs); Smith v. Mullin, 379 F.3d 919 (10th Cir. 2004) (reversing for failure to present

---

[15] As this Court accurately observed in Gardner v. Johnson, 247 F.3d 551, 563 (5th Cir. 2001), "decades of experience ... teach an obvious lesson that is frequently overlooked: Almost without exception, the cases [where] a capital crime has produced a death sentence arise from extremely egregious, heinous, and shocking facts. But, if that were all that is required to offset prejudicial legal error and convert it to harmless error, habeas relief based on evidentiary error in the punishment phase would virtually never be available, so testing for it would amount to a hollow judicial act."

mitigating evidence about defendant's mental problems and poor upbringing, despite defendant's having killed five people (his wife and her four children)).

Finally, despite Respondent's effort to portray this as an open-and-shut case for death, the District Court itself acknowledged that "the jury deliberated for a substantial period of time" at the penalty phase. ROA 1574. The lengthy deliberations suggest Hall suffered prejudice from counsels' deficient performance, and thus support issuance of a COA. *See* Daniels, 428 F.3d at 1209 (fact that jury "deliberated for two days before returning a [death] verdict" "suggests that the jury may have been influenced by mitigation evidence had it been offered").

Respondent's "no prejudice" contention is also debatable because neither Respondent nor the District Court acknowledged that Strickland's prejudice inquiry requires assessment of the *cumulative* impact of all of counsels' errors and omissions. Williams v. Taylor, 529 U.S 362, 397-398 (2000); Wiggins, 539 U.S. at 534; Moore v. Johnson, 194 F.3d 586, 619 (5th Cir. 1999) (considering "the cumulative errors of counsel"). This proposition is so well-settled that it is objectively unreasonable, not just erroneous, to ignore it. Dugas v. Coplan, 428 F.3d 317, 335 (1st Cir. 2005) (court must "consider the cumulative effect of counsel's errors in determining ... prejudice[]"); Gersten, 426 F.3d at 611 (same,

citing <u>Lindstadt v. Keane</u>, 239 F.3d 191, 204 (2nd Cir. 2001)); <u>Mackey v. Russell</u>, 148 Fed. Appx. 355, 367 (6th Cir. 2005) (unpublished) (following "the clear precedent of <u>Strickland</u>," reviewing court must "evaluate the cumulative effect of all of [trial counsel's] errors ... instead of considering each individually"); *id.* at 368-69 (failure to consider "counsel's errors ... *in toto*" is "contrary to clearly established Supreme Court law" (citations omitted)); <u>Boyde v. Brown</u>, 404 F.3d 1159, 1176 (9th Cir. 2005), *modified on rehearing*, 421 F.3d 1154 (9th Cir. 2005) ("[P]rejudice may result from the cumulative impact of multiple deficiencies"); <u>Sanders v. Ryder</u>, 342 F.3d 991, 1001 (9th Cir. 2003) ("Separate errors by counsel ... should be analyzed together to see whether their cumulative effect" was prejudicial; multiple errors are "not separate claims, but different aspects of a single claim of ineffective assistance of trial counsel") (citations omitted).

V. **Regardless of its ruling with respect to Hall's other COA requests, the Court should direct the Clerk to set a briefing schedule on the merits of Hall's appeal of the District Court's orders denying funds.**

Just as it argues that Hall's challenge to the denial of a hearing is "not cognizable," Respondent contends that a COA cannot issue to review the lower court's orders refusing discovery or funds. Although this Court has held that "a COA is not necessary to appeal the denial of funds for expert assistance," <u>Smith</u>,

422 F.3d at 288, the upshot is that such issues are directly appealable. *See* id. Thus, at a minimum, this Court must direct the Clerk to set a briefing schedule on the merits of Hall's challenges to the District Court's orders denying adequate funding. *See also* Hill v. Johnson, 210 F.3d 481, 487, n. 2 (5th Cir. 2000) ("A COA is not required for appeals under § 848(q)(4)(B)."). In contradistinction, this Court has treated other procedural rulings (like the denial of discovery) as matters to be decided initially through a COA application. Hill, 210 F.3d at 487 (denying COA on claim that district court erred in denying additional discovery, because issue was not debatable among reasonable jurists); United States v. Webster, 392 F.3d 787, 801-02 (5th Cir. 2004) (denying COA on claim that district court erred in denying discovery).

**VI. Respondent distorts the facts relevant to Hall's request for discovery regarding likely juror misconduct.**

Respondent misleads the Court in arguing that no further fact-development of Hall's claim of juror misconduct is necessary. Opp. 30-31. Respondent suggests that the only basis for Hall's claim is "an affidavit from his sister." Opp. 30. The record makes clear that other evidence corroborates Hall's allegation that the media aired post-verdict juror interviews containing a reference to a pre-verdict "birthday party" at which Lisa Rene was memorialized. *See, e.g.,* Exhibits to

Second Amended 2255 Motion (Dkt. # 1070) at 64 (trial counsel Ware's note regarding the incident, including notation "file motion to interview jurors!").

More important, the District Court arbitrarily refused Hall access to the most obvious evidence that would both prove (or disprove) the preliminary facts on which this claim rests *and* identify the specific juror with actual knowledge of the relevant events *without disturbing any other juror* – namely, **the videotape from the television news report in question**. There is no longer any dispute about whether such post-verdict juror interviews were televised. *See* R. 35:8-9 (testimony of juror Holmes that post-verdict interviews with her and "several" other jurors aired locally). Thus, we now **know** the videotape of post-verdict juror interviews exists. Granting Hall access to that videotape would not implicate *any* of the juror privacy issues that typically justify limits on inquiries into juror misconduct. Nor would it invade any legal right of the television stations themselves (since Hall seeks only the report that *actually aired*, not the "raw footage" of the interviews). The District Court's unreasonable refusal to authorize even this extremely limited discovery – access to the televised footage of post-verdict juror interviews – was an abuse of discretion. *Cf.* Oswald v. Bertrand, 374 F.3d 475, 481-84 (7th Cir. 2004) (granting relief where trial court's inquiry was too

superficial to resolve questions about possible juror bias).

## VII. Reassignment

Regarding whether the case should be assigned on remand, Hall respectfully directs the Court's attention to Judge M. Margaret McKeown, *Don't Shoot the Canons: Maintaining the Appearance of Propriety Standard*, 7 J. App. Prac. & Process 45, 53-58 (2005), which forcefully urges the importance of maintaining the appearance of judicial impartiality in all circumstances. Contrary to Respondent's contention, the District Court did not make "findings" subject to review in this proceeding for clear error. Opp. 51. Instead, it denied a fair determination of the facts in the first instance by crediting Respondent's allegations wholesale – despite their being directly contradicted by sworn evidence submitted by Hall – without a hearing. The District Court's treatment of Hall's claims is consistent with a desire to vindicate the performance of the attorneys it hand-picked for this case. Under such circumstances, Judge McKeown's analysis of the requirements of the "appearance of propriety" would support assigning further proceedings to a different judge.

## VIII. Conclusion and Prayer for Relief

The Court should grant COA on the requested issues, accept briefs, and schedule argument. In the alternative, the Court should remand for an evidentiary hearing on Hall's IAC claim without further briefing. In the alternative only, the Court should order briefs regarding whether the District Court abused its discretion in denying funds, as that issue is appealable even without COA. *See supra.*

Respectfully Submitted,

ROBERT C. OWEN
Texas Bar No. 15371950
Law Offices of Owen & Rountree, L.L.P.
P.O. Box 40428
Austin, Texas 78704
(512) 804-2661
(512) 804-2685 FAX

MARCIA A. WIDDER
Capital Appeals Project
636 Baronne Street
New Orleans, Louisiana 70113
(504) 529-5955

Counsel for Orlando Cordia Hall

# CERTIFICATE OF COMPLIANCE

5th Cir. R. 22 provides that "[a]pplications for certificates of appealability . . . must conform to the format requirements and length requirements of Fed. R. App. P. 32(a) and 5th Cir. R. 32 as applicable." Fed R. App. P. 32(a)(7)(B)(i) provides that "a reply brief is acceptable if [it] contains no more than half of the type volume specified in Rule 32(a)(7)(B)(i) [*i.e.*, 7,000 words]."

Pursuant to Fed. R. App. P. 32(a)(7)(C) and 5th Cir. R. 32.3, the undersigned certifies that the foregoing reply in support of COA, exclusive of this Certificate and the Certificate of Service, contains **6,864** words. The document was created in Microsoft Word 2000 for Windows. It is printed using Times New Roman font, in 14 point variable space type in the text and 12 point variable space type in the footnotes. (Word count by Microsoft Word 2000).

I understand that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits, may result in the court's striking the brief and imposing sanctions against the person signing the brief.

Signature of filing party
(Robert C. Owen)

# APPENDIX 1

<u>Smith v. Mississippi Dept. of Corrections</u>,
153 Fed. Appx. 328 (5th Cir. 2005) (unpublished)

Briefs and Other Related Documents
This case was not selected for publication in the Federal Reporter.Please use FIND to look at the applicable circuit court rule before citing this opinion. Fifth Circuit Rule 47.5.4. (FIND CTA5 Rule 47.)
    United States Court of Appeals,Fifth Circuit.
    Jessie Clifton SMITH, Petitioner-Appellant,
                        v.
MISSISSIPPI DEPARTMENT OF CORRECTIONS,
               Respondent-Appellee.
                 No. 04-60618.
               Summary Calendar.

             Decided Nov. 10, 2005.

**Background:** Petitioner sought writ of habeas corpus. The United States District Court for the Southern District of Mississippi dismissed the petition, without evidentiary hearing.

**Holding:** The Court of Appeals held that habeas trial court could not rely on credibility determination alone, relating to conflicting affidavits of petitioner and his trial counsel.

Vacated and remanded.

             West Headnotes

Habeas Corpus 197 ⚷➡723

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
        197III(C) Proceedings
            197III(C)2 Evidence
                197k715 Criminal Proceedings, Weight and Sufficiency
                    197k723 k. Jury; Grand Jury; Deliberations. Most Cited Cases
Habeas trial court could not rely on credibility determination alone, relating to conflicting affidavits of petitioner and his trial counsel, as basis for dismissing petitioner's habeas claims that he had been deprived of right to impartial jury and that trial counsel had been ineffective in failing to strike three jurors, where there was no indication that habeas trial court's credibility determination was supported by evidence in the record either corroborating trial

counsel's affidavit testimony or refuting defendant's. U.S.C.A. Const.Amend. 6.

\*328 Jessie Clifton Smith, Mississippi Department of Corrections, Mississippi Correctional Institution, Leakesville, MS, Pro Se.
Jerrolyn M. Owens, Paula Henderson Broome, Office of the Attorney General for the State of Mississippi, Jackson, MS, for Respondent-Appellee.

Appeal from the United States District Court for the Southern District of Mississippi, USDC No. 3:02-CV-1539-WSU.

Before BARKSDALE, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM: FN*

> FN* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

\*\*1 This court previously granted Jessie Clifton Smith, Mississippi prisoner # 08031, a certificate of appealability on the issues whether the district court abused its discretion by failing to hold an evidentiary hearing to resolve conflicting affidavits concerning Smith's claims that (1) he was deprived of his right to an impartial jury and (2) counsel was ineffective for failing to strike jurors Monzella Tickles, La Shunda Bonds, and Shirley Wells.

Prior to the enactment of the AEDPA, this court held that while a habeas petition may be decided on the basis of affidavit testimony, "contested facts ordinarily may not be decided on affidavits alone unless there is other evidence in the record supporting them." *Jordan v. Estelle,* 594 F.2d 144, 144-45 (5th Cir.1979) (internal citations omitted). *Jordan* held that where there is nothing in the record to support the affidavit testimony, it is error \*329 to deny habeas relief without an evidentiary hearing where the petitioner's allegations, if true, would entitle him to habeas relief. *See id.* at 146. Moreover, a petitioner who presents a facially adequate claim of ineffective assistance of counsel is entitled to some form of evidentiary hearing in order

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

to fully and fairly adjudicate his claims. *See Brown v. Johnson,* 224 F.3d 461, 466-67 (5th Cir.2000).

However, this court recognized in *McDonald v. Johnson,* 139 F.3d 1056, 1060 (5th Cir.1998), that although a petitioner may not be precluded from obtaining a federal evidentiary hearing to resolve conflicting affidavit testimony, he is not necessarily entitled to one. This court held that if a district court has sufficient facts before it to make an informed decision such that an evidentiary hearing would not further develop material facts relevant to the constitutional claim, a petitioner is not entitled to a hearing. *See id.*

In the instant case, there is an absence of evidentiary support for either Smith's or counsel's affidavit testimony. Given the absence of any indication that the district court's credibility determination was supported by evidence in the record either corroborating counsel's affidavit testimony or refuting Smith's, the district court improperly relied on the conflicting affidavit testimony alone to resolve the constitutional issues. *See Jordan,* 594 F.2d at 144-45.

Based on the foregoing, we VACATE the district court's dismissal and REMAND the case for further findings of fact relevant to (1) whether Smith was deprived of his right to an impartial jury and (2) whether counsel was ineffective for failing to strike jurors Tickles, Bonds, and Wells.

VACATED AND REMANDED.

C.A.5 (Miss.),2005.
Smith v. Mississippi Dept. of Corrections
153 Fed.Appx. 328, 2005 WL 3032338 (C.A.5 (Miss.))

Briefs and Other Related Documents (Back to top)

• 04-60618 (Docket) (Jul. 20, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# APPENDIX 2

<u>United States v. McBrayer</u>,
111 Fed. Appx. 723 (5th Cir. 2004) (unpublished)

Briefs and Other Related Documents
This case was not selected for publication in the Federal Reporter.Please use FIND to look at the applicable circuit court rule before citing this opinion. Fifth Circuit Rule 47.5.4. (FIND CTA5 Rule 47.)

United States Court of Appeals,Fifth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ruby L. McBRAYER, also known as Ruby Posey McBrayer, also known as Ruby L. Posey, Defendant-Appellant.
No. 04-60156.
Summary Calendar.

Sept. 30, 2004.

**Background:** Federal prisoner filed motion to vacate, set aside, or correct sentence. The United States District Court for the Southern District of Mississippi denied motion, and prisoner moved for certificate of appealability (COA).

**Holding:** The Court of Appeals held that district court was required to hold evidentiary hearing on prisoner's ineffective assistance claim.

COA granted; vacated and remanded.

West Headnotes

**Criminal Law 110 ⌘1655(6)**

110 Criminal Law
   110XXX Post-Conviction Relief
     110XXX(C) Proceedings
      110XXX(C)3 Hearing and Determination
       110k1651 Necessity for Hearing
        110k1655 Particular Issues
         110k1655(6) k. Counsel. Most Cited Cases
District court was required to hold evidentiary hearing on federal prisoner's § 2255 motion to vacate based on her contention that her attorneys were ineffective for failing to timely disclose and designate accountant as expert witness, where accountant's testimony in state court resulted in directed verdict in prisoner's favor, and there were contested facts regarding whether prisoner timely provided necessary

information to accountant, and despite any delays by prisoner, whether attorneys received accountant's report and supporting documents in time to comply with trial court's discovery order. 28 U.S.C.A. § 2255.

*724 Richard Terrell Starrett, Assistant U.S. Attorney, Robert Gilmon Anderson, Jackson, MS, for Plaintiff-Appellee.
Cynthia Ann Stewart, Jackson, MS, for Defendant-Appellant.

Appeal from the United States District Court for the Southern District of Mississippi, USDC Nos. 3:03-CV-1165, 3:00-CR-171-2-BS.

Before JONES, BARKSDALE, and PRADO, Circuit Judges.

PER CURIAM: FN*

> FN* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

**1 Ruby L. McBrayer, federal prisoner # 05985-043, moves in this court for a certificate of appealability ("COA") to appeal the district court's denial of her 28 U.S.C. § 2255 motion to vacate, set aside, or correct her sentence. McBrayer argues, in pertinent part, that her trial attorneys were ineffective for failing to timely disclose and designate accountant Jan Miller as an expert witness. She argues that, as a result, she was prejudiced because the trial court excluded the testimony of Miller, whose testimony in state court resulted in a directed verdict in McBrayer's favor, and whose testimony in federal court would have led to a different result. McBrayer argues that the district court's failure to hold an evidentiary hearing on this issue was error.

A COA motion may be granted only if the movant makes a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). This requires the movant to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484, 120

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

S.Ct. 1595, 146 L.Ed.2d 542 (2000).

The district court, without conducting an evidentiary hearing, found that the attorneys' failure to timely designate Miller as an expert was McBrayer's fault because she did not timely provide to Miller the documents necessary to prepare her report. The court focused on McBrayer's statement that she had some difficulty obtaining those documents. The court thus concluded that McBrayer's attorneys were not negligent in failing to timely designate Miller as an expert witness.

"[C]ontested fact issues [in a 28 U.S.C. § 2255 case] ordinarily may not be decided on affidavits alone, unless the affidavits are supported by other evidence in the record." *United States v. Hughes,* 635 F.2d 449, 451 (5th Cir. Unit B 1981). The record does not conclusively show that McBrayer is entitled to no relief. *See United States v. Bartholomew,* 974 F.2d 39, 41 (5th Cir.1992). The affidavits presented by McBrayer, those presented by her attorneys, and the record as a whole show that there are contested facts regarding whether McBrayer timely provided the necessary information to Miller, and despite any delays by McBrayer, whether the attorneys received Miller's report and supporting documents in time to comply with the trial court's discovery order.

McBrayer has stated a facially valid claim of the denial of a constitutional right regarding her contention that her attorneys were ineffective for failing to timely disclose and designate accountant Jan Miller as an expert witness. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Accordingly, we GRANT McBrayer a COA on this issue, *725 VACATE the district court's denial of 28 U.S.C. § 2255 relief, and REMAND to the district court for an evidentiary hearing regarding this issue. *See Dickinson v. Wainwright,* 626 F.2d 1184, 1186 (5th Cir.1980). This order is in no way intended to express any intimation as to the ultimate outcome of this issue.

**2 McBrayer does not argue, and thus has waived, her claims raised in the district court that these attorneys were ineffective because there was a conflict of interest in their representing both her and her husband and because they failed to designate Kenneth Parker as an expert witness and to prepare adequately for trial. *See Hughes v. Johnson,* 191 F.3d 607, 613 (5th Cir.1999).

COA GRANTED; VACATED AND REMANDED.

C.A.5 (Miss.),2004.
U.S. v. McBrayer
111 Fed.Appx. 723, 2004 WL 2244211 (C.A.5 (Miss.))

Briefs and Other Related Documents (Back to top)

• 04-60156 (Docket) (Feb. 27, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# APPENDIX 3

<u>United States v. McMillen,</u>
96 Fed. Appx. 219 (5th Cir. 2004) (unpublished)

Briefs and Other Related Documents

This case was not selected for publication in the Federal Reporter.Please use FIND to look at the applicable circuit court rule before citing this opinion. Fifth Circuit Rule 47.5.4. (FIND CTA5 Rule 47.)

United States Court of Appeals,Fifth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Walter Wayne MCMILLEN, Defendant-Appellant.
No. 03-11051
Summary Calendar.

April 28, 2004.

**Background:** Federal prisoner filed § 2255 motion to vacate, set aside, or correct sentence. The United States District Court for the Northern District of Texas, 2003 WL 21751707, denied motion, and prisoner moved for certificate of appealability (COA).

1 **Holding:** The Court of Appeals held that district court abused its discretion in denying prisoner's § 2255 motion without holding evidentiary hearing.

Motion granted in part, denied in part; vacated and remanded.

West Headnotes

**[1] Criminal Law 110 ⌘→1655(6)**

110 Criminal Law
　110XXX Post-Conviction Relief
　　110XXX(C) Proceedings
　　　110XXX(C)3 Hearing and Determination
　　　　110k1651 Necessity for Hearing
　　　　　110k1655 Particular Issues
　　　　　　110k1655(6) k. Counsel. Most Cited Cases
District court abused its discretion in denying federal prisoner's § 2255 motion to vacate alleging that counsel failed to file notice of appeal upon request and that he would not have pleaded guilty but for his counsel's ineffectiveness without holding evidentiary hearing, where prisoner's affidavit set forth facts that,

if true, showed that his counsel lied to him during plea negotiations, that he was working as confidential informant at time of his arrest, and that he asked his counsel to investigate and present public authority defense but that counsel refused to do so. 28 U.S.C.A. § 2255.

**[2] Criminal Law 110 ⌘→641.13(7)**

110 Criminal Law
　110XX Trial
　　110XX(B) Course and Conduct of Trial in General
　　　110k641 Counsel for Accused
　　　　110k641.13 Adequacy of Representation
　　　　　110k641.13(2) Particular Cases and Problems
　　　　　　110k641.13(7) k. Post-Trial Procedure and Review. Most Cited Cases
Defense counsel's failure to file notice of appeal upon request is ineffective assistance of counsel without showing that appeal would have merit. U.S.C.A. Const.Amend. 6.

***220** Appeal from the United States District Court for the Northern District of Texas. USDC Nos. 3:02-CV-2078-G, 3:01-CR-139-ALL-G.

Susan B. Cowger, Michael Gill, US Attorney's Office, Dallas, TX, for Plaintiff-Appellee.
Walter Wayne McMillen, Federal Correctional Institution, Beaumont, TX, pro se.

Before SMITH, DEMOSS, and STEWART, Circuit Judges.

PER CURIAM: [FN*]

> FN* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

**1 Walter Wayne McMillen ("McMillen"), federal prisoner # 26819-177, moves this court for a certificate of appealability ("COA") to appeal the district court's denial of his 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence. Construing his motion liberally, McMillen argues

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

that the waiver in his plea agreement did not bar his 28 U.S.C. § 2255 motion and that the district court should have held an evidentiary hearing on his claims that he would not have pleaded guilty but for his counsel's ineffectiveness and that his counsel was ineffective for failing to file a notice of appeal. McMillen's further argument that the district court erred by failing to consider the combined affect of his ineffective assistance of counsel claims is refuted by the record. McMillen additionally states that all of the claims he raised in the district court were meritorious, but because he does not explain why his remaining claims were meritorious, he has failed to adequately brief these claims and they are deemed waived. *See Yohey v. Collins,* 985 F.2d 222, 224-25 (5th Cir.1993).

To obtain a COA, McMillen must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As McMillen's 28 U.S.C. § 2255 motion was denied both on procedural*221 grounds and on its merits, he "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" and "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

The claims that McMillen raises in this court are ineffective assistance of counsel claims. Although some ineffective assistance of counsel claims may be waived, *see United States v. White,* 307 F.3d 336, 343-44 (5th Cir.2002), in this case the waiver specifically excepted ineffective assistance of counsel claims. Accordingly, McMillen's waiver did not bar these claims and McMillen has shown that the district court's procedural ruling was debatable or wrong. *See Slack,* 529 U.S. at 484.

The district court denied McMillen's relevant ineffective assistance of counsel claims without conducting an evidentiary hearing because the affidavit of McMillen's counsel contradicted McMillen's allegations, because it found that no evidence supported McMillen's claim that he had a viable public authority defense, and because it found that any appeal McMillen could have filed would have been meritless. McMillen's affidavit, however, set forth facts that, if true, showed that his counsel failed to file a notice of appeal after McMillen requested that he do so, that his counsel lied to him during plea negotiations, that he was working as a confidential informant at the time of his arrest, and

that he asked his counsel to investigate and present a public authority defense but that his counsel refused to do so.

A district court may deny a 28 U.S.C. § 2255 motion without holding an evidentiary hearing "only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Bartholomew,* 974 F.2d 39, 41 (5th Cir.1992). We review a district court's denial of a 28 U.S.C. § 2255 motion without holding an evidentiary hearing for an abuse of discretion. *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir.1998). "[C]ontested fact issues [in a 28 U.S.C. § 2255 case] ordinarily may not be decided on affidavits alone, unless the affidavits are supported by other evidence in the record." *United States v. Hughes,* 635 F.2d 449, 451 (5th Cir. Unit B 1981).

**2 [1] [2] The record does not conclusively show that McMillen is not entitled to relief on his ineffective assistance of counsel claims. *See Hughes,* 635 F.2d at 451. McMillen presented facially valid claims that he would not have pleaded guilty but for his counsel's ineffectiveness and that his counsel was ineffective for failing to file a notice of appeal. *See Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Strickland v. Washington,* 466 U.S. 668, 688-92, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Roe v. Flores-Ortega,* 528 U.S. 470, 477, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). The district court's finding that any direct appeal filed by McMillen would have been without merit does not change this analysis because the failure to file a notice of appeal upon request is ineffective assistance of counsel without a showing that the appeal would have merit. *See Flores-Ortega,* 528 U.S. at 477. Accordingly, we GRANT McMillen a COA on his claims that he would not have pleaded guilty but for his counsel's ineffectiveness and that his counsel was ineffective for failing to file a notice of appeal, VACATE the district court's denial of 28 U.S.C. § 2255 relief, and REMAND to the district court for an evidentiary hearing regarding these issues. *See Dickinson v. Wainwright,* 626 F.2d 1184, 1186 (5th Cir.1980). COA is DENIED on any remaining issues.

*222 COA GRANTED IN PART, DENIED IN PART; VACATED AND REMANDED.

C.A.5 (Tex.),2004.
U.S. v. McMillen
96 Fed.Appx. 219, 2004 WL 906543 (C.A.5 (Tex.))

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

96 Fed.Appx. 219, 2004 WL 906543 (C.A.5 (Tex.))
**(Cite as: 96 Fed.Appx. 219)**

Briefs and Other Related Documents (Back to top)

• 03-11051 (Docket) (Oct. 15, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# APPENDIX 4

<u>United States v. Noble</u>,
73 Fed. Appx. 669 (5th Cir. 2003) (unpublished)

Westlaw.

73 Fed.Appx. 669

73 Fed.Appx. 669, 2003 WL 21949744 (C.A.5 (La.))
(Cite as: 73 Fed.Appx. 669)

Briefs and Other Related Documents
This case was not selected for publication in the Federal Reporter.Please use FIND to look at the applicable circuit court rule before citing this opinion. Fifth Circuit Rule 47.5.4. (FIND CTA5 Rule 47.)
United States Court of Appeals,Fifth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bernard W. NOBLE, Defendant-Appellant.
No. 03-30209.
**Summary Calendar**

Aug. 15, 2003.

Defendant filed motion to vacate. The United States District Court for the Eastern District of Louisiana denied relief. Defendant moved for certificate of appealability (COA) allowing his appeal. The Court of Appeals held that defendant stated facially valid claim that he was denied effective assistance of counsel.

Certificate of appealability granted; denial of relief vacated and case remanded.

West Headnotes

**Criminal Law 110 1073**

110 Criminal Law
  110XXIV Review
    110XXIV(F) Proceedings, Generally
      110k1073 k. Certificate of Probable Cause or Reasonable Doubt. Most Cited Cases

**Criminal Law 110 1655(6)**

110 Criminal Law
  110XXX Post-Conviction Relief
    110XXX(C) Proceedings
      110XXX(C)3 Hearing and Determination
        110k1651 Necessity for Hearing

        110k1655 Particular Issues
          110k1655(6) k. Counsel. Most Cited Cases
The record, which contained conflicting affidavits from defendant and his trial attorney, did not conclusively show that defendant had not asked his trial attorney to file a direct appeal, and therefore defendant stated facially valid claim that he was denied effective assistance of counsel based on his trial attorney's failure to file allegedly requested appeal, warranting certificate of appealability (COA) allowing defendant to appeal denial of his motion to vacate, vacating of district court's denial of relief on such motion, and evidentiary hearing on issue. U.S.C.A. Const.Amend. 6; 28 U.S.C.A. §§ 2253(c)(2), 2255.

*669 Appeal from the United States District Court for the Eastern District of Louisiana. (Nos. 02-CV-1273, 00-CR-376-1).

Before JOLLY, WIENER, and DENNIS, Circuit Judges.

PER CURIAM. FN*

> FN* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

**1 Defendant-Appellant Bernard W. Noble, federal prisoner # 19620-034, moves this court for a certificate of appealability ("COA") to appeal the district court's denial of his 28 U.S.C. § 2255 motion to vacate, set aside, or his correct sentence. Noble argues, *inter alia,* that his trial attorney failed to file a direct appeal, despite his request that counsel do so.

A COA motion may be granted only if the movant

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

73 Fed.Appx. 669 .

73 Fed.Appx. 669, 2003 WL 21949744 (C.A.5 (La.))
(Cite as: 73 Fed.Appx. 669)

makes a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). This requires the movant to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

"[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega,* 528 U.S. 470, 477, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). If counsel fails to file a requested appeal, a defendant is entitled to a new appeal without showing that his appeal would have merit because *670 he reasonably relied on counsel to file the necessary notice. *Id.*

The district court, without conducting an evidentiary hearing, rejected Noble's contention that he instructed his counsel to file an appeal because the district court concluded that Noble failed to show that he conveyed his intent to appeal to counsel. However, Noble, in his affidavit, specifically stated that on the day he was sentenced, he requested that counsel file an appeal. Noble's trial attorney, on the other hand, stated in her affidavit that Noble never indicated that he was interested in appealing.

"[C]ontested fact issues [in a 28 U.S.C. § 2255 case] ordinarily may not be decided on affidavits alone, unless the affidavits are supported by other evidence in the record." *United States v. Hughes,* 635 F.2d 449, 451 (5th Cir. Unit B 1981). The record does not conclusively show that Noble did not request an appeal. *See United States v. Bartholomew,* 974 F.2d 39, 41 (5th Cir.1992).

Noble has stated a facially valid claim of the denial of a constitutional right regarding his contention that his counsel was ineffective for failing to file a direct appeal. Accordingly, we GRANT Noble a COA on this issue, VACATE the district court's denial of 28 U.S.C. § 2255 relief, and REMAND to the district court for an evidentiary hearing regarding this issue. *See Dickinson v. Wainwright,* 626 F.2d 1184, 1186 (5th Cir.1980). In light of our disposition on this issue, we pretermit ruling on

any remaining issues. *See Mack v. Smith,* 659 F.2d 23, 26 (5th Cir. Oct. 9, 1981). Noble's motion to proceed *in forma pauperis* (IFP) on appeal is GRANTED.

COA GRANTED; VACATED AND REMANDED; IFP GRANTED.

C.A.5 (La.),2003.
U.S. v. Noble
73 Fed.Appx. 669, 2003 WL 21949744 (C.A.5 (La.))

Briefs and Other Related Documents (Back to top)

• 03-30209 (Docket) (Mar. 11, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of January 2006, a true and correct copy

of the foregoing pleading was served upon opposing counsel by depositing it in

United States First Class mail for delivery to:

Delonia A. Watson
Assistant United States Attorney
Burnett Plaza, Suite 1700
801 Cherry St., Unit #4
Fort Worth, Texas 76102-6882