# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,    )
       Plaintiff-Appellee    )
                  )
v.                   )     NO. 04-70050
                  )
ORLANDO CORDIA HALL,    )
       Defendant-Appellant  )

U.S. COURT OF APPEALS
FILED
AUG 1 8 2006
CHARLES R. FULBRUGE III
CLERK

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

---

## PETITION FOR *EN BANC* REHEARING ON
## APPLICATION FOR CERTIFICATE OF APPEALABILITY

---

## THIS IS A CAPITAL CASE

---

ROBERT C. OWEN
Texas Bar No. 15371950
Owen & Rountree, LLP
P.O. Box 40428
Austin, Texas 78704
Tel. 512-804-2661
Fax 512-804-2685

MARCIA A. WIDDER
Louisiana Bar No. 23367
636 Baronne St.
New Orleans, LA 70113
Tel. 504-558-9867
Fax. 504-558-0378

COUNSEL FOR ORLANDO HALL

# CERTIFICATE OF INTERESTED PERSONS

Undersigned counsel of record certifies that the following persons have an interest in the outcome of this case. These representations are made so that the Judges of this Court may evaluate possible grounds for recusal:

District Judge

Honorable Terry R. Means

Petitioner-Appellant

Orlando Cordia Hall

Present and Past Counsel
for Petitioner-Appellant,
Orlando Cordia Hall

Robert C. Owen (§ 2255 proceedings)

Marcia A. Widder (§ 2255 proceedings and appeal)

R. Neal Walker (appeal)

Michael L. Ware (trial and appeal)

Jeffrey A. Kearney (trial)

Michael P. Heiskell (trial)

Mark G. Daniel (trial)

Present and Past Counsel
for Appellee, United States
of America

Paul E. Coggins (United States Attorney for the Northern District of Texas)

Delonia A. Watson (trial, appeal and § 2255 proceedings)

Christopher Curtis (trial and appeal)

Richard Roper (trial)

Paul Macaluso (trial)

Dated: 8/18/06

*Marcia A. Widder*

Marcia A. Widder
636 Baronne Street
New Orleans, LA 70113
(504) 529-5955

Attorney for Petitioner, Orlando Hall

# INTRODUCTORY STATEMENT OF COUNSEL

Undersigned counsel expresses a belief, based upon a reasoned and studied professional judgment, that the panel opinion in this matter conflicts with relevant decisions from the United States Supreme Court and this Circuit in the following matters:

I.    The panel's denial of a certificate of appealability (COA) regarding the district court's failure to conduct an evidentiary hearing on Petitioner's ineffective assistance of counsel ("IAC") claim in this federal death penalty case is squarely irreconcilable with controlling authority from the United States Supreme Court and this Circuit holding that a motion under 28 U.S.C. § 2255 "can be denied without a hearing only if the motion, files, and records of the case *conclusively show* that the prisoner is entitled to no relief." *U.S. v. Alanis*, 88 Fed. Appx. 15 (5th Cir. 2004) (emphasis supplied) (citing *U.S v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992); *see, e.g., Machibroda v. U.S.*, 368 U.S. 487, 494-96 (1962).

II    The panel's decision to deny COA regarding the district court's failure to conduct an evidentiary hearing to resolve Petitioner's IAC claim directly conflicts with *Smith v. Dretke*, 422 F.3d 269 (5th Cir. 2005). The panel's effort to distinguish *Smith* rests on both flawed readings of that decision and mischaracterizations of the record in this matter.

Respectfully submitted,

Marcia A. Widder
636 Baronne Street
New Orleans, LA 70113
Phone: 504-529-5955
Fax: 504-558-0378

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTORY STATEMENT OF COUNSEL . . . . . . . . . . . . . . . . . . . . . . . iv

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUGGESTION FOR REHEARING *EN BANC* . . . . . . . . . . . . . . . . . . . . . . . 7

I.   The panel's conclusion that the District Court properly denied Hall
     an evidentiary hearing on his IAC claim conflicts with the statutory
     command of 28 U.S.C. § 2255, and decisions from the Supreme
     Court, this Court, and sister Circuits mandating an evidentiary
     hearing to resolve disputed factual issues . . . . . . . . . . . . . . . . . . . . . . . . 7

II.  The panel's denial of COA to address Hall's IAC claim conflicts with
     this Court's decision in *Smith v. Dretke*, 422 F.3d 269 (5th Cir.2005) . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES

## CASES

*Friedman v. U.S.*, 588 F.2d 1010 (5th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . 8

*Machibroda v. U.S.*, 368 U.S. 487 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv, 8

*Miller v. Dretke*, 420 F.3d 356 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . 13

*Miller-El v. Cochran*, 537 U.S. 322 (2003) . . . . . . . . . . . . . . . . . . . . . . . . 15

*Smith v. Dretke*, 422 F.3d 269 (5th Cir. 2005) . . . . . . . . . . . . . . . . iv, 2, 3, 12-15

*Smith v. U.S.*, 348 F.2d 545 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Tenny v. Dretke*, 416 F.3d 404 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . 13

*U.S. v. Alanis*, 88 Fed. Appx. 15 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . iv, 7-8

*U.S. v. Alvarez*, 172 Fed. Appx. 587 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . 8

*U.S. v. Hall*, 152 F. 3d 381 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 3, 6

*U.S. v. Heckler*, 165 Fed. Appx. 360 (5th Cir. 2/3/06) . . . . . . . . . . . . . . . . . . . 8

*U.S. v. Rodrigues*, 347 F.3d 818 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . 8

*U.S. v. Squillacote*, 2006 U.S. App. LEXIS 13685 (4th Cir. 6/2/06) . . . . . . . . . . . 8

*Wiggins v. Smith*, 539 U.S. 510 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## STATUTES

18 U.S.C. § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 1201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 2255 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv, 1, 7

FED. R. APP. PROC. 35 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## STATEMENT OF THE ISSUES

This case presents the question whether the panel erred in holding that a district court may resolve a hotly disputed issue of fact in a proceeding under 28 U.S.C. § 2255 by simply crediting the affidavits submitted by one party, rather than conducting an evidentiary hearing at which the affiants could be tested by cross-examination and confronted with evidence that rebuts their claims.

At the penalty phase of Hall's federal capital trial, his attorneys presented only two witnesses in mitigation, Hall's mother and sister, whose brief and superficial testimony sketched the bare outlines of Hall's violent and deprived upbringing. In post-conviction proceedings below, Hall challenged trial counsels' performance as ineffective, submitting many detailed affidavits and other documentary exhibits. Hall's affidavits, if credited, established that trial counsels' mitigation investigation fell below prevailing professional standards: counsel began investigating too late, abandoned promising areas of investigation for no good reason, did a half-hearted job of developing the true facts of Hall's experience of physical abuse as a child, and left completely untouched important areas such as Hall's neuropsychological impairment, acts of kindness and heroism toward his own family (including saving his nephew from drowning) and exceptionally positive adjustment to prior incarceration.

In answering Hall's 2255 motion, the Government introduced affidavits from Hall's trial attorneys, who defended the limits they placed on their investigation as

1

justified by, *e.g.*, Hall's responses to a "questionnaire" they gave him to fill out, and who asserted that their other acts and omissions were based on strategic judgments. In reply, Hall submitted still *more* affidavits, including from extensively qualified experts who emphatically rejected trial counsels' claimed reliance on the "questionnaire" as objectively unreasonable. Hall also submitted evidence, including an affidavit from trial counsels' investigator, indicating that counsel never attached any such significance to Hall's responses on the "questionnaire" in the first place.

Without conducting a hearing, the District Court credited trial counsels' affidavits and on that basis denied relief, and thereafter denied COA. On Hall's application for COA in this Court, the panel concluded that no reasonable jurist could disagree with the District Court's choice to credit trial counsels' untested affidavits, rather than conduct an evidentiary hearing, to resolve Hall's challenge to trial counsels' performance.[1] In so doing, it dismissed the relevance of *Smith v. Dretke*, 422 F.3d 269 (5th Cir. 2005), which reached the opposite conclusion – granting COA on materially indistinguishable facts.

*En banc* rehearing is warranted to answer the following questions of "exceptional importance," FED. R. APP. PROC. 35(b)(1)(B).

I. Whether the panel correctly held that no reasonable jurist could disagree

---

[1] The panel expressly declined to reach *Strickland*'s prejudice prong, resolving the case solely by endorsing the District Court's crediting of trial counsels' affidavits and thereby concluding that Hall had not made a sufficient showing of deficient performance to warrant COA.

that the District Court justifiably denied Hall an evidentiary hearing on his IAC claim, despite the fact that Hall submitted expert affidavits conclusively rebutting his trial attorneys' claims that they conducted a competent investigation and made "strategic" decisions to limit the case actually presented in mitigation;

II. Whether the panel opinion conflicts with *Smith v. Dretke*, 422 F.3d 269 (5th Cir. 2005), which granted COA where counsel similarly presented a half-hearted case in mitigation despite the ready availability of extensive and more powerfully persuasive mitigating evidence.

## STATEMENT OF PROCEEDINGS

Hall was convicted and sentenced to death in 1995 for violating 18 U.S.C. §§ 1201(a)(1) and 2. This Court affirmed. *U.S. v. Hall*, 152 F. 3d 381 (5th Cir. 1998). The District Court denied relief under 28 U.S.C. § 2255 and denied COA. The panel denied COA in a published opinion. *U.S. v. Hall*, __F.3d __, 2006 WL 1828641 (5th Cir. 7/5/06) (hereinafter "Slip Op.") (Exh. A).[2]

## STATEMENT OF RELEVANT FACTS

By trial counsels' own admission, Hall's trial was about punishment. As one of them explained in an affidavit submitted by the Government below, "the evidence

---

[2] We cite Hall's Second Amended Motion pursuant to 28 U.S.C. § 2255 as "the 2255 Motion"; the Record on Appeal from the District Court's denial of Hall's 2255 Motion as "R. [Vol. #]:[Page #]" and Record Excerpts submitted with Hall's COA Application as "R.E. [page #]. Exhibits to Hall's original and amended 2255 Motions and Reply are separately contained in boxes sent to this Court. Exhibits attached to the 2255 Motion will be cited as "2255 Exh. [page #]"; exhibits to the Reply will be cited as "Reply Exh. [page #]."

of [Hall's] guilt . . .was overwhelming," leaving "very little for a defense lawyer to argue on the issue of guilt/innocence . . . ." R. 40:1115. Nonetheless, despite having been appointed more than six months earlier, trial counsel did not begin to investigate mitigation until approximately two weeks before Hall's trial began.

Trial counsels' necessarily time-pressured investigation produced a penalty phase defense consisting of eight witnesses whose direct examinations occupy approximately 42 transcript pages. Only two, Hall's mother Betty and sister Cassandra Ross, described Hall's upbringing and character.[3]

Betty Hall's testimony gave jurors only the briefest glimpse of Hall's upbringing and background. She described her own employment and listed her children. She then briefly attested to her ex-husband's abusive behavior, beginning about three years into their marriage and continuing until she left with the children when Hall was in his mid-teens.[4] According to his mother, Hall divided his time between her and her ex-husband after they separated, went to prison for drugs at about age twenty, and was later paroled. She agreed that Hall was a good father to his children. She described how she had testified against the death penalty for her own

---

[3] Six testified briefly about bad qualities of Hall's co-defendants and Hall's lack of disciplinary problems at Mansfield Jail before another inmate alleged that Hall was planning an escape attempt. *See* R. 33:53-54, 60, 79-86, 92-95, 98-102, 106-08.

[4] Betty Hall described her relationship with A.J. as "bad, a lot of abusive, a lot of fighting, a lot of beating;" testified that A.J. beat her with weapons like a gun butt, boards, and his fists; and told how anything might set him off. She also testified that the Hall children tried unsuccessfully to intervene. *Id.* at 114-16.

brother's killer nine years earlier. Asked by defense counsel what she was "asking this jury to do," she said she was asking them not to take her child's life because it would not bring the victim back and was wrong. The court sustained the prosecutor's objection. Mrs. Hall concluded by discussing the Bible. R. 33:111-121.[5]

Cassandra Ross, whose direct testimony occupies just over six pages, identified herself as Hall's older sister and briefly described A.J.'s physical abuse of Betty, the children's futile attempts to intervene, how her mother left A.J. when Hall was about fifteen, and how Hall shuttled between his parents thereafter. She told how Hall lived briefly with her and her husband in Texas, but returned to Arkansas at his mother's request. Ross also testified that Hall's four children loved him. She tried to say Hall was remorseful for Lisa Rene's murder, but the Government's objection was sustained. She concluded by calling Hall a caring and loving father, stating she was shocked to learn of his involvement in the crime, and asking the jury to sentence him to life imprisonment because he was remorseful. R. 33:136-43.[6]

---

[5] On cross-examination, the government elicited that Betty and A.J. did their best to raise their children, ensuring they were sheltered and fed and went to school and church, that Hall had gone through the eleventh grade but quit for some reason, that Hall then worked at the poultry plant for less than a year before being arrested on drug charges and that, although A.J. beat Betty for years, he did not abuse the Hall children, including Orlando. R. 33:122-35. There was no re-direct.

[6] On cross, the Government elicited Ross' testimony that the violence in her family left her especially sensitive to women being abused by men; that the Hall children were not physically abused; that her parents made sure she was fed and sheltered, went to church and school, and knew the difference between right and wrong; that she did the same for Hall when he lived with her; and that, although she and Hall grew up in the same house, she had no criminal history. R.33:142-48. The defense abandoned its attempt at re-direct after a flurry of sustained objections. *Id.* at 148-50.

Although this testimony about Hall's childhood was unrebutted, only one juror found the "circumstances surrounding [Hall's] upbringing" mitigating. R. 6:1382.[7]

The panel did not reach the question of prejudice from trial counsels' deficient performance, but it is appropriate to add a short description of the mitigating evidence reasonably effective counsel would have developed. Had trial counsel complied with the prevailing standard of practice by undertaking a timely and comprehensive investigation, jurors would have heard a far more compelling account of Hall's traumatized youth, including the fact that Hall was – contrary to the depiction at trial – himself a target of A.J. Hall's physical abuse.[8] Moreover, the jury would have

---

[7] On direct appeal, this Court held that the other jurors' failure to find this mitigating circumstance was understandable, given the paltry and unpersuasive nature of Hall's evidence. *See Hall, supra,* 152 F.3d at 413 (emphasizing that "Hall was not himself the object of his father's abuse" and was otherwise "properly housed, fed, and clothed."). In these proceedings, the panel turned its earlier dismissal of this evidence on its head, claiming that, on appeal, "we did consider the significant evidence, presented by Hall's trial counsel to the jury, which demonstrated that Hall's upbringing was marked by violence." Slip Op. 17.

[8] The extent to which A.J. Hall terrorized his entire family was not brought out at trial. In contrast to the summary description of his assaults on Betty, jurors would have learned how explosive and arbitrary those attacks were – how they could be triggered by trivial perceived slights, innocent comments, or indeed by nothing at all. *See, e.g.,* 2255 Exh. 175-77, 183-85, 191, 195, 241-42, 247, 249-50, 253. The beatings left Betty physically and psychologically debilitated, causing permanent black rings around her eyes and scar tissue on her head and nose, destroying her lovely singing voice, eating away at her self-esteem and leaving her depressed, withdrawn and unavailable to the Hall children. *Id.* at 177, 191, 196, 200, 211-12, 253. After the beatings, A.J. often forced himself on Betty sexually – rapes the Hall children could hear. *Id.* at 178, 191. The Hall children were constantly exposed to this violence and unable to stop it. *Id.* at 177, 183-84, 191, 195, 211-12.

Moreover, contrary to the picture presented at trial, the violence in the Hall home extended to the children. The Hall boys were beaten by both parents with switches and belts. *Id.* at 185-86, 191-92, 196, 199, 242. Long and arbitrary delays between the alleged transgressions and the punishments inflicted left the children waiting in terror for the attacks to come. *Id.* at 196, 199, 242. As a child, Hall would wet the bed from fear as he lay awake waiting for a beating. *Id.* at 199.

learned that Hall suffers from neuropsychological deficits that impair his judgment, *see* 2255 Exh. 563-81; that he had positive personality traits and had once saved his nephew's life, *see id.* at 192-93, 220, 229; that he had been a "model prisoner" everywhere he had been confined,[9] *see* 527-55; and that his original involvement in the illegal drug economy could be explained in part by the environment of his hometown of El Dorado, Arkansas, and his sudden responsibility, as a teenager, to look after his younger brothers when his parents separated and his mother abandoned the children, *see* 188, 192, 197, 200-01, 212-16, 253, 257; R.E. 206-97.

## SUGGESTION FOR REHEARING *EN BANC*

I.  **The panel's conclusion that the District Court properly denied Hall an evidentiary hearing on his IAC claim conflicts with the statutory command of 28 U.S.C. § 2255, and decisions from the Supreme Court, this Court, and sister Circuits mandating an evidentiary hearing to resolve disputed factual issues.**

28 U.S.C. § 2255 provides in pertinent part:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court *shall* . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

(Emphasis added). A § 2255 motion "can be denied without a hearing only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *U.S. v. Alanis*, 88 Fed. Appx. 15 (5th Cir. 2004) (emphasis supplied)

---

[9] Trial counsel made a weak effort to elicit such testimony from Betty Hall. She was not qualified to answer and an objection to counsel's leading question was sustained. R. 33:118.

(Exh. B) (citing *U.S. v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992), *Friedman v. U.S.*, 588 F.2d 1010, 1014-15 (5th Cir. 1979), *Machibroda v. U.S.*, 368 U.S. 487, 494-96 (1962), and 28 U.S.C. § 2255).[10]

In 2255 proceedings, "[c]ontested factual issues ordinarily may not be decided on affidavits alone, unless the affidavits are supported by other evidence in the record." *U.S. v. Heckler*, 165 Fed. Appx. 360, 361-62 (5th Cir. 2/3/06) (Exh. C) (citation omitted).[11] Thus, in *U.S. v. Alvarez*, 172 Fed. Appx. 587 (5th Cir. 2006) (Exh. E), this Court granted COA and reversed a District Court's denial of a 2255 motion alleging ineffective assistance of counsel, because the disparities between petitioner's sworn pleadings and trial counsel's affidavit for the Government created a contested issue of fact precluding resolution on the basis of affidavits alone.

Hall submitted extensive evidence in the form of declarations by lay witnesses

---

[10] As this Court explained in *Friedman v. U.S.*, 588 F.2d 1010, 1015 (5th Cir. 1979), determining whether to conduct a hearing on a § 2255 motion requires the district court to assess (1) whether the record *conclusively* negates the factual predicates asserted in support of the motion and, if not, (2) whether the petitioner would be entitled to relief if his factual allegations are true. *See also Alanis*, *supra*, 88 Fed. Appx. at 19-20 (noting that discrepancies between affidavit and trial testimony established need for "further factual development," that "contested fact issues in § 2255 cases cannot be resolved on the basis of affidavits" and that "'if the record contains an evidentiary conflict on a material issue of fact, a judge must hold an evidentiary hearing to decide who is telling the truth.'") (citations omitted). Moreover, "a Section 2255 petitioner's burden 'for establishing an entitlement to an evidentiary hearing is relatively light." *Smith v. U.S.*, 348 F.2d 545, 551 (6th Cir. 2003) (quoting *Turner v. U.S.*, 183 F.3d 474, 477 (6th Cir. 1999)); *see also U.S. v. Rodrigues*, 347 F.3d 818, 824 (9th Cir. 2003) ("Section 2255 imposes a fairly lenient burden on the petitioner" to obtain a hearing).

[11] *See, e.g., Alanis*, *supra*, 88 Fed. Appx. at 19-20. Indeed, a 2255 motion should not be dismissed without a hearing "when there is opposing sworn testimony, even when one side's story is 'hard to believe.'" *U.S. v. Squillacote*, 2006 U.S. App. LEXIS 13685 (4th Cir. 6/2/06) (Exh. D) (citing *Gray v. Spillman*, 925 F.2d 90, 95 (4th Cir. 1991)).

and experts, and additional documentary proof that provided substantial factual support for his IAC claim. The Government submitted affidavits disputing some (but not all) of the facts in Hall's proffered evidence.[12] These factual disputes necessitated an evidentiary hearing. Nonetheless, the panel concluded that no hearing was necessary because it credited the Government's contentions while failing even to acknowledge Hall's contrary proof.

For example, Hall's experts provided detailed declarations setting forth the prevailing professional norms at the time of Hall's trial and the numerous ways in which trial counsels' performance fell below those standards.[13] The panel dismissed

---

[12] As Hall has shown, some of the Government's allegations are actually disproven by the record. For instance, the Government submitted an affidavit from trial attorney Ware, in which Ware declares *inter alia* that he made a tactical decision not to call Rev. D.L. Hegler as a mitigation witness based on a memorandum he received October 22, 1995, indicating that Hegler had made "damaging" statements about Hall in an interview. *See* R. 40:1108-10. Ware's own notes, however, demonstrate that, after that date, he intended to call Rev. Hegler as a witness, and telephone records corroborate Rev. Hegler's sworn statement that trial counsel summoned him to Hall's trial, only to fail to use him for reasons that were not explained. *See* R. 41:1313-17; Reply Exh. 179.

Further, other claims in Ware's affidavit cannot be reconciled with the sworn accounts of disinterested parties (*e.g.*, attorney Kevin McNally, who disputes Ware's claim that the defense team never really wanted to have Hall allocute, *see* Reply Exh. 20). Such contested issues of fact precluded resolution of Hall's IAC claim without first conducting an evidentiary hearing. *See infra*.

[13] Hall submitted declarations from three highly qualified experts, setting forth the standard of practice at the time of Hall's trial and explaining how trial counsels' performance fell below that standard. Michael Tigar, a well-known criminal defense attorney who led the successful defense of Terry Nichols in the federal Oklahoma City bombing trial, authored two declarations giving his expert opinion about trial counsels' performance, *see* 2255 Exh. 78-100, Reply Exh. 34-53 (R.E. 160-82, 209-28). Jill Miller, M.S.S.W., a mitigation specialist with extensive experience in capital cases, provided four declarations, *see* 2255 Exh. 109-69; Reply Exh. 22-33, two of which appear at R.E. 183-208, 229-40. Kevin McNally, who provided expert assistance to trial counsel in this case, authored two affidavits. *See* 2255 Exh. 102-108; Reply Exh. 17-21.

these expert opinions on grounds that beg the very question presented. The panel, for instance, concluded that trial counsels' investigation was reasonable because counsel "spoke with Hall and presented him with a lengthy questionnaire [from which they] learned that Hall felt that he had a reasonably happy and peaceful childhood, although he had been whipped when he was bad." Slip Op. 18-19. The panel decision completely disregarded contrary evidence submitted by Hall demonstrating that, even assuming counsel in fact relied on this questionnaire,[14] such reliance was *itself* deficient. *See* R.E. 229 (prevailing practice forbade relying on such a form to obtain "sensitive and personal information," because client's responses would likely not disclose all relevant information; "all specialized capital defense training materials, etc., from the same period" reflect this view); Reply Exh. 20 (same). Moreover, the questionnaire consistently refers to the client in the third person, employs highly specialized vocabulary,[15] uses "loaded" language, and presumes detailed knowledge of the client's birth and infancy. *Id.* at 233-36. It is manifestly "a template for a mitigation specialist or investigator," not the client himself, and competent counsel would have recognized that. *Id.* at 236; *see also* Reply Exh. 5.

Likewise, the panel found trial counsels' performance adequate because they

---

[14] Hall disputes that counsel ever *read* this questionnaire, much less relied on it. Counsel never mentioned it to either Tena Francis or Kevin McNally, much less claimed the questionnaire foreclosed potential areas of investigation. *See* Reply Exh. 4-5, 20.

[15] *E.g.*, "toxemia," "culture-appropriate discipline," "aberrant sexual modeling," "Magnetic Resonance Imagery," "avocational pursuits," "olfactory," "déjà vu," "macropsia," and "micropsia."

"also made use of a private investigator to help evaluate and investigate Hall's background." Slip Op. at 19. The panel, however, ignored this investigator's own sworn statement that his work on Hall's case "did not involve investigating Mr. Hall's family background or social history" or "developing mitigating evidence"; accordingly, he "never interviewed . . . Mr. Hall's family."[16] 2255 Exh. 66.[17]

Moreover, in finding a hearing unnecessary to resolve Hall's IAC claim, the panel limited its discussion to the evidence about Hall's violent upbringing,[18] and disregarded Hall's proffer of *additional* mitigating circumstances that, according to Hall's experts, reasonably effective counsel would have investigated, including evidence of neuropsychological deficits that impair Hall's judgment, *see* 2255 Exh.

---

[16] This investigator's time records reflect that he worked on the case for only 9.6 hours from the time he was appointed in November 1994, until a month before trial began on October 2, 1995, when he provided 5.8 hours of assistance at the suppression hearing. He thereafter did no work on the case until a week before trial began. *See* 2255 Exh. 68-69.

[17] The panel also contended that counsels' work was sufficient because they "interviewed Hall's mother and sister Cassandra" and called them to testify, and they "employed the services of a mitigation specialist named Tena Francis," who "interviewed additional family members and a minister familiar with Hall's childhood and background" whom counsel decided, for "tactical reasons," not to call. Slip Op. 19. The panel's conclusion that these actions insulate trial counsels' performance overlooks Hall's contrary evidence (1) showing that counsel had limited contact with Hall's mother and sister and failed to prepare them to testify, and (2) contesting both the adequacy of Francis' investigation and the reasonableness of any decisions counsel may have made not to present additional evidence. The panel decision also disregards evidence proffered by Hall regarding readily available witnesses who were never contacted by the defense team. *See, e.g.,* 2255 Exh. 244 (Hall's father); 248 (Rev. Jerry Ross); 251 (Gracie Ross); 254 (Jerline Hill); 258 (Jamie Garrett).

[18] The panel's conclusion that trial counsel were aware that Hall was the target of significant abuse and sought to present such evidence, *see* Slip Op.22, is belied by trial counsel's own contention that "[a]lthough Tena Francis later reported to me that she was sure that there must have been severe child abuse in the home, including abuse of the defendant, nothing in her investigation or mine corroborated her feeling." R. 40:1108.

563-81; Hall's positive personality traits and heroism in saving the life of his nephew, *see id.* at 192-93, 220, 229; and his exemplary prior prison record, *see id.* at 527-55.

The panel's failure to acknowledge these critical factual disputes undermines its holding that the District Court properly rejected Hall's IAC claim without first conducting an evidentiary hearing, and calls for *en banc* reconsideration.

**II.     The panel's denial of COA to address Hall's IAC claim conflicts with this Court's decision in *Smith v. Dretke*, 422 F.3d 269 (5th Cir. 2005).**

In *Smith v. Dretke*, 422 F.3d 269 (5th Cir. 2005), this Court granted COA on the merits of a penalty-phase IAC claim in a capital case. As Hall argued to the panel, *Smith*'s reasoning likewise compels a COA grant here.

*Smith* makes plain, first, that a reviewing court may not conclude that counsel performed adequately simply because counsel conducted *some* investigation into the defendant's background. Although the state court had credited trial counsels' affidavits saying they "interviewed many of Smith's family members and childhood acquaintances," *id.* at 277, this Court correctly held that "the question [wa]s whether the investigation conducted could be considered adequate *in light of professional norms.*" *Smith*, 422 F.3d at 280 (emphasis added). Because professional norms at the time of Smith's 1990 trial required counsel to conduct a wide-ranging and thorough inquiry into the defendant's "medical history, educational history, employment history, family and social history, prior adult and juvenile correctional experience, and religious and cultural influences," even "extensively interviewing" a few

12

witnesses may not have provided an adequate basis for making reasonable judgments about the penalty phase. *Id.* at 279-80. Like the state court in *Smith*, both the panel and the District Court in this case simply endorsed trial counsels' claims about their investigation without evaluating their actions in light of prevailing professional norms. The panel erred in not reading *Smith* to require a COA.

*Smith* also forecloses the argument that counsel could reasonably choose to limit their presentation of a particular area of mitigating evidence, such as the defendant's prior successful adjustment to incarceration, without first thoroughly investigating to find all available evidence. Smith's trial counsel presented one witness to describe Smith's good behavior while incarcerated. *Smith*, 422 F.3d at 278. Adequate investigation, however, would have revealed that Smith had "a near spotless disciplinary record" in prison. *Id.* This Court held that counsels' decision to limit their presentation on this important subject to a single witness could not be sustained unless it was preceded by a thorough investigation. *Id.* at 279.[19]

The same is true here. While the District Court emphasized that trial counsel "presented testimony from [a jailer] that there were no records of any disciplinary

---

[19] *Smith* precludes the panel's apparent adoption of the Government's argument that an IAC claim based on defense counsel's failure to offer "more" evidence than was presented at trial cannot prevail. In *Smith*, even though counsel presented mitigating testimony regarding Smith's "disadvantaged background" and cocaine use around the time of the crime, the Court granted COA because reasonable counsel might have developed these facts in greater and more persuasive detail, including by using experts. 422 F.3d at 283-84. *See also Miller v. Dretke*, 420 F.3d 356 (5th Cir. 2005); *Tenny v. Dretke*, 416 F.3d 404 (5th Cir. 2005).

problems with Hall," Order at 32, a reasonably thorough investigation would have produced other, much stronger evidence to counter the prosecution's claim that Hall would be dangerous in prison if not executed. *See* 2255 Exh. 520-555. Here, as in *Smith*, reasonable jurists could dispute whether to defer to a "strategic" choice made after an unreasonably limited investigation.[20]

Despite the evident parallels between *Smith* and Hall's case, the panel concluded that *Smith* was inapposite, contending that "several critical distinctions prevent the direct application of *Smith*'s holding to this matter." Slip Op. at 23-24. The panel identified only two such "distinctions," neither of which holds water.

First, the panel stated that Smith's trial counsel "could not remember specific details about their background investigation" and that the record tended to support the inference that they "'only contacted those individuals who actually testified at trial,'" in contrast to the "much broader investigation" Hall's counsel purportedly conducted. Slip. Op. 24. This conclusion rewrites *Smith*, because in *Smith* there was *no finding* that trial counsel had only interviewed the handful of witnesses who testified. To the contrary, it was the Smith's *argument* (rather than an actual finding)

---

[20] *Smith* cautions against crediting trial counsels' *post hoc* claims of "strategic" justification that defy the trial record, particularly where such claims are rebutted by the record. *See Smith*, 422 F.3d at 281. Here, for instance, the District Court credited counsels' claim that they chose not to investigate and present Hall's background of deprivation and abuse because "the conservative jury Hall would pull in North Texas was less likely [to] accept 'excuse defenses.'" Opp. 14. This decision was made before counsel had undertaken the type of investigation mandated by *Wiggins v. Smith*, 539 U.S. 510 (2003), and, as in *Smith*, counsels' claim is "contrary to the actual testimony presented at sentencing," which showed, however sketchily, the violence that marked the Hall home.

14

that the state court had erred in relying on "the affidavits of trial counsel . . . that they interviewed many of Smith's family members and childhood acquaintances and made a strategic decision to [limit the testimony presented]," because "trial counsel's affidavits give no details as to exactly who they contacted or what was learned from the individuals they contacted." *Id.* at 277. This Court granted COA because reasonable jurists could find trial counsels' affidavits unworthy of credence given their variance with the habeas record – a conclusion equally warranted here.

Second, the panel insisted that *Smith* was inapposite because Smith's counsel "provided substantive statements about the defendant's background which were directly 'contrary to the actual testimony presented at sentencing . . . .'" Slip Op. 24. The record and briefs submitted in this case likewise document repeated instances where trial counsels' sworn statements are affirmatively disproved by the habeas record. *See, e.g., supra,* at 9, n.12.

The panel's inability convincingly to distinguish *Smith* suggests that Hall's IAC claim was improvidently rejected. A prisoner seeking COA need not demonstrate that he would prevail on the merits, but only that he has made a "substantial showing of the denial of a constitutional right." *Miller-El v. Cochran,* 537 U.S. 322, 327 (2003) (citations omitted). Here, as in *Smith,* jurists of reason could disagree with the District Court's denial of Hall's IAC claim. The panel decision's direct conflict with *Smith* calls for *en banc* consideration of this issue.

15

# CONCLUSION

For the foregoing reasons, Petitioner respectfully submits that this Court should grant rehearing *en banc*.

*Marcia A. Widder*

ROBERT C. OWEN
Texas Bar No. 15371950
Owen & Rountree, LLP
P.O. Box 40428
Austin, Texas 78704
Tel. 512-804-2661
Fax 512-804-2685

MARCIA A. WIDDER
Louisiana Bar No. 23367
636 Baronne St.
New Orleans, LA 70113
Tel. 504-558-9867
Fax. 504-558-0378

COUNSEL FOR ORLANDO HALL

## CERTIFICATE OF SERVICE

This certifies that a true and correct copy of the foregoing petition for rehearing

*en banc* has been served on counsel for the Government by placing the same into the

United States Mail, first-class postage prepaid, addressed to:

> AUSA Delonia Watson
> Office of the U.S. Attorney
> 801 Cherry Street, Suite 1700
> Fort Worth, TX 76102

this 18th day of August, 2006.

*Marcia A. Widder*

Marcia A. Widder

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 5, 2006

Charles R. Fulbruge III
Clerk

REVISED JULY 28, 2006

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 04-70050

---

UNITED STATES OF AMERICA

        Plaintiff-Appellee

v.

ORLANDO CORDIA HALL

        Defendant-Appellant

---

Appeal from the United States District Court
for the Northern District of Texas

---

Before KING, SMITH, and STEWART, Circuit Judges.

KING, Circuit Judge:

Defendant-appellant Orlando Hall, a federal prisoner under a sentence of death, has applied for a certificate of appealability to challenge the district court's denial of his motion to vacate his conviction and sentence under 28 U.S.C. § 2255. Hall previously sought, and was denied, a certificate of appealability from the district court. For the reasons discussed below, we DENY Hall's application for a certificate of appealability.

## I. BACKGROUND

Orlando Cordia Hall ("Hall") ran a marijuana trafficking enterprise in Pine Bluff, Arkansas, along with Bruce Webster ("Webster") and Marvin Holloway ("Holloway"). Hall, Webster, and Holloway bought marijuana in the Dallas/Fort Worth area, assisted by Steven Beckley ("Beckley"), who lived in Irving, Texas. Typically, Beckley drove the marijuana back to Arkansas, and Holloway stored the marijuana in his house.

On September 21, 1994, Holloway drove Hall from Pine Bluff to Little Rock, Arkansas, and Hall then flew from Little Rock to Dallas in order to buy marijuana. Beckley and Hall's brother, Demetrius Hall ("D. Hall") picked Hall up at the Dallas airport. Later that day, Hall and Beckley met two local drug dealers, Stanfield Vitalis ("Vitalis") and Neil Rene ("N. Rene"), at a car wash and gave them $4700 to procure marijuana. Hall and Beckley returned to the car wash to pick up the marijuana, but Vitalis and N. Rene did not return. Hall then spoke with Vitalis and N. Rene by telephone, and Vitalis and N. Rene told Hall that they had been robbed of both their car and the $4700 entrusted to them.

Hall and Beckley then gave Vitalis's and N. Rene's phone number to a friend who worked for the telephone company, and this friend told them that the number was associated with an address at the Polo Run Apartments in Arlington, Texas. Hall, D. Hall,

2

and Beckley began surveilling this address, and they saw Vitalis and N. Rene exit an apartment and approach the same car which they claimed had been stolen along with the $4700. Based on this surveillance, Hall and Beckley concluded that Vitalis and N. Rene had lied about the robbery and had kept the $4700 for themselves.

Hall called Holloway on September 24, 1994, and instructed him to drive Webster to the airport in Little Rock. Webster then flew from Little Rock to Dallas. That evening, Hall, D. Hall, Beckley, and Webster drove to the Polo Run Apartments in a car owned by Hall's sister Cassandra. Hall and Webster each carried handguns, D. Hall carried a souvenir baseball bat, and Beckley carried duct tape and a jug of gasoline.

When they arrived, Webster and D. Hall knocked on the front door of the apartment that Vitalis and N. Rene had left. Lisa Rene ("Rene"), N. Rene's sixteen-year-old sister, was alone in the apartment and refused them entry. When Webster and D. Hall began issuing threats, Rene called her sister and 911. Webster attempted to kick in the front door, but when that failed he and D. Hall circled around to the patio and broke into the apartment through a glass door. Webster then entered the apartment, tackled Rene, and dragged her back to Hall's sister's car. The group then drove away from the Polo Run Apartments and returned to Hall's sister's apartment, where Beckley's car was parked. There, they forced Rene into Beckley's car and then drove off in a group. During this second drive Hall raped Rene. Later, the

3

group returned to Hall's sister's apartment, and from there Beckley, D. Hall, and Webster drove back to Pine Bluff along with Rene. Hall remained behind and flew back to Arkansas the next day.

Once Beckley, D. Hall, and Webster reached Pine Bluff, Holloway provided them with money, which they used to move into a motel room. There, they tied Rene to a chair and raped her repeatedly. On September 25, 1994, Hall and Holloway arrived at the motel room and took Rene into the bathroom for approximately twenty minutes. When they emerged, Hall told Beckley, "She know too much," and then he left the motel with Holloway and Webster.

After leaving the motel, Hall and Webster went to Byrd Lake Park and dug a grave. That evening, Hall, Webster, and Beckley took Rene to Byrd Lake Park, but they could not find the grave site in the dark, so they returned to the motel room. Early the next morning, on September 26, 1994, Beckley and D. Hall moved Rene to another motel because they were concerned that a security guard at the first motel was becoming suspicious.

Later on the morning of the 26th, Webster, Hall, and Beckley again drove Rene to Byrd Lake Park, after covering her eyes with a mask, and they took her to the grave site, which they were able to locate in the daylight. At the grave site, Hall placed a sheet over Rene's head and then hit her once in the head with a shovel. Rene screamed and attempted to run away, but Beckley grabbed her and hit her twice in the head with the shovel.

4

Beckley then handed the shovel to Hall, and Hall and Beckley took turns beating her. When they had finished, Webster gagged Rene, dragged her into the grave, covered her with gasoline, and covered her with dirt. In its current brief before this court, the government reminds us that the medical report supported findings that Rene was alive but unconscious when she was buried by Webster, that she died from the effects of the multiple blunt force injuries she suffered during her beating, combined with asphyxia, and that she may have regained consciousness in the grave before her death. After Rene was buried, the three men returned to the motel and picked up D. Hall.

On September 29, 1994, an arrest warrant was issued in Arlington for Hall, D. Hall, and Beckley for Rene's kidnapping, and D. Hall, Beckley, and Webster were arrested. On September 30, 1994, Hall surrendered to Pine Bluff authorities in the presence of his attorney. Based on his attorney's advice, Hall did not give a statement at arrest, but he indicated that he would talk once he was transported to Texas. On October 5, 1994, Hall gave a written statement to FBI and Arlington County officials in which he substantially implicated himself in Rene's kidnapping and death.

The United States District Court for the Northern District of Texas issued a criminal complaint on October 26, 1994, charging Hall, D. Hall, Webster, and Beckley with kidnapping in violation of 18 U.S.C. § 1201(a)(1). On November 4, 1994, a six-

count superseding indictment was returned, charging Hall, D. Hall, Webster, Beckley, and Holloway with kidnapping in which a death occurred in violation of 18 U.S.C. § 1201(a)(1), conspiracy to commit kidnapping in violation of 18 U.S.C. § 1201(c), traveling in interstate commerce with intent to promote the possession of marijuana with intent to distribute in violation of 18 U.S.C. § 1952, using a telephone to promote the unlawful activity of extortion in violation of 18 U.S.C. § 1952, traveling in interstate commerce with intent to promote extortion in violation of 18 U.S.C. § 1952, and using and carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c).

The government filed notice of its intent to seek the death penalty against Hall on February 23, 1995. The district court severed Hall's trial from the trial of his codefendants on April 6, 1995, and his trial began on October 2, 1995. On October 31, 1995, the jury convicted Hall of kidnapping in which a death occurred, conspiracy to commit kidnapping, traveling in interstate commerce to promote possession of marijuana with intent to distribute, and using and carrying a firearm during a crime of violence. After a separate hearing, the jury recommended, by unanimous vote, that Hall receive the death penalty.[1]

---

[1]  Hall was sentenced to death for the kidnapping conviction, life imprisonment for the conspiracy conviction, and sixty months imprisonment for each of the remaining two convictions.

Hall appealed, and his conviction and sentence were affirmed by this court on August 21, 1998. <u>United States v. Hall</u>, 152 F.3d 381, 389-90 (5th Cir. 1998) [hereinafter <u>Hall</u>]. Hall filed a petition for rehearing with this court, which was denied on October 1, 1998. Hall then petitioned the Supreme Court for a writ of certiorari, which was denied on May 17, 1999. <u>United States v. Hall</u>, 526 U.S. 1117 (1999).

Hall filed his initial motion to vacate his conviction and sentence, pursuant to 28 U.S.C. § 2255, in May 2000. In June 2000, the district court granted Hall's request to file a discovery motion. Hall filed an initial discovery motion in August 2000 and a supplemental discovery motion in May 2001. The district court denied both motions in April 2002. Hall then filed a second § 2255 motion to vacate in June 2002, and he filed an amended version of this motion to vacate in September 2002. In this second amended motion, Hall raised twelve claims for relief from his conviction and sentence.[2] See <u>Hall v. United</u>

---

[2] The district court found that the twelve claims listed in Hall's motion raised nine issues, specifically whether:

A. Hall's rights under the Fifth Amendment were violated because the indictment against him did not allege any aggravating factors that rendered Hall eligible for the death penalty (claim one).

B. Hall was denied his Sixth Amendment right to the effective assistance of counsel (claim two).

C. A juror's contact with the victim's family and other extraneous information that entered into the jury's deliberations violated Hall's rights under the Fifth,

<u>States</u>, No. 4:00-CV-422-Y, slip op. at 6, 2004 WL 1908242 (N.D. Tex. Aug. 24, 2004) [hereinafter Dist. Ct. Op.].

The government filed a response to this second amended motion to vacate in January 2003, and Hall replied in March 2003.

---

Sixth, and Eighth Amendments (claims three through five).

D. The government violated Hall's rights under the Fifth and Sixth Amendments by failing to disclose exculpatory and mitigating information concerning government witness Larry Nichols (claim six).

E. Hall's rights under the Fifth, Sixth, and Eighth Amendments were violated because of false testimony given by government witnesses Larry Nichols and Steven Beckley (claims seven and twelve).

F. The government violated Hall's Sixth Amendment rights by using jail inmate Larry Nichols to elicit information from Hall (claim eight).

G. Hall's rights under the Fifth, Sixth, and Eighth Amendments were violated when the government provided a statement to the defense made by Alonso Airy that contained false information for the purpose of dissuading the defense from calling Airy to the stand (claim nine).

H. The government interfered with Hall's Sixth Amendment right to counsel when it advised his initial defense attorneys about information that Hall intended to kidnap the attorneys in an escape attempt (claim ten).

I. Hall's rights under the Fifth And [sic] Eighth Amendments were violated by the racially discriminatory effects of the federal capital sentence scheme (claim eleven).

<u>Hall v. United States</u>, No. 4:00-CV-422-Y, slip op. at 6-7, 2004 WL 1908242 (N.D. Tex. Aug. 24, 2004) [hereinafter Dist. Ct. Op.]. The district court also noted that Hall moved for "an evidentiary hearing before this Court on all of his claims." <u>Id.</u> at 7.

On June 7, 2004, the district court conducted an evidentiary hearing limited to the extraneous influence on the jury issues raised by Hall's third, fourth, and fifth claims for relief, which were grouped together by the district court as issue C in the list reproduced in note 2 supra. On August 24, 2004, the district court issued a comprehensive, careful memorandum opinion and order, denying all of the claims presented in Hall's § 2255 motion for relief.

Hall filed a notice of appeal from the district court's order denying his § 2255 motion on November 9, 2004, and he applied to the district court for a certificate of appealability ("COA") on that same date as well. The district court denied Hall's COA application on December 6, 2004, citing Hernandez v. Johnson, 213 F.3d 243, 248 (5th Cir. 2000), and finding that Hall had failed to make a substantial showing of the denial of a federal constitutional right. On July 18, 2005, Hall filed the present application for a COA with this court.

## II. DISCUSSION

This court may not consider an appeal from the denial of a 28 U.S.C. § 2255 motion for relief unless either the district court or this court issues a COA. 28 U.S.C. § 2253(c)(1)(B). To obtain a COA, an applicant such as Hall "must make a substantial showing of the denial of a constitutional right." United States v. Garza, 165 F.3d 312, 314 (1999) (citing 28 U.S.C.

9

§ 2253(c)(2), and <u>United States v. Kimler</u>, 150 F.3d 429, 431 n.1 (5th Cir. 1998)).  An applicant such as Hall "need not establish that he will win on the merits"; rather, "he need only demonstrate that the questions he raises are debatable among reasonable jurists."  <u>Garza</u>, 165 F.3d at 314 (citing <u>United States v. Rocha</u>, 109 F.3d 225, 227 n.2 (5th Cir. 1997)).  "In determining whether to grant a COA, our inquiry is limited to a threshold examination that 'requires an overview [of Hall's current claims] . . . and a general assessment of their merits.'"  <u>Smith v. Dretke</u>, 422 F.3d 269, 273 (5th Cir. 2005) (quoting <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003)).  Because this matter involves a sentence of death, "any doubts as to whether a COA should be issued must be resolved" in Hall's favor.  <u>Smith</u>, 422 F.3d at 273 (quoting <u>Hernandez</u>, 213 F.3d at 248) (internal alterations omitted).

Hall raises several distinct claims in his current application for a COA.  First, Hall believes that a COA should issue to determine whether the district court erred in denying five of the specific substantive claims in his § 2255 motion.  Second, Hall claims a COA should issue to address whether the district court erred by limiting the June 7, 2004, evidentiary hearing solely to his extraneous influence upon the jury claims.  Third, Hall claims that a COA should issue to address whether the district court erred in denying all discovery.  Fourth, Hall

10

claims that a COA should issue to determine whether the district court erred in denying him reasonable additional funds to develop further evidence.  Finally, Hall claims that this court should assign a new judge if it decides that a remand is necessary.  The government has provided substantive and direct responses to all of the claims discussed above.[3]

The remainder of this opinion will discuss the claims in Hall's application for a COA, and the government's substantive response to these claims, in greater detail.  Because both Hall and the government devote most of their attention to Hall's five general merits claims--particularly his ineffective assistance of counsel claim--these will be addressed first, together with related procedural claims.

---

[3]   In responding to Hall's second amended § 2255 motion, the government also argued that Hall was "procedurally barred from raising all but his second and part of his third through fifth claims for relief because [the barred claims] were not raised on direct appeal and he has failed to allege any cause and prejudice for the procedural default."  Dist. Ct. Op. at 7-8.

The district court was not persuaded by the government's procedural objections.  Although it recognized that many of the claims "were not raised on direct appeal and are not based on new law or facts," the district court chose to address the claims "in the interests of justice" because "Hall . . . alleged that his appellate counsel was ineffective for not raising these claims." Dist. Ct. Op. at 8.

In responding to Hall's current application for a COA, the government briefly observes (in a single footnote) that it "is not abandoning any of those procedural bars," and it argues that "[i]n the event this Court elects to grant COA on any issue, the government will rely on those procedural bars in its [subsequent] response."  Gov't Br. at 8 n.1.  Because these arguments have not been sufficiently briefed at this stage, we will not consider them at any greater length.

## A.    Hall's Substantive Claims

In his current application for a COA, Hall reiterates five of the substantive claims from his § 2255 motion: his ineffective assistance of counsel claim, his extraneous influence on the jury claim, his incomplete indictment claim, his prosecutorial misconduct claim, and his selective prosecution claim.  Related to these five claims is his procedural claim that the district court erred in limiting the evidentiary hearing to the extraneous influence on the jury claim.  Of the five substantive claims, the ineffective assistance of counsel claim is the most important to his current application; in his brief before this court, Hall acknowledges that the "centerpiece of this case is . . . [the] penalty-phase IAC [ineffective assistance of counsel] claim." Therefore, the ineffective assistance of counsel claim will be considered first, and the sentencing component of this claim will be considered most extensively.

### 1.    Hall's Ineffective Assistance of Counsel Claim

In the proceedings before the district court, Hall claimed that his trial counsel was constitutionally ineffective on twelve separate grounds, all of which are substantially reiterated in his current application for a COA.[4]  After separately and

---

[4]    More specifically, Hall contended that his trial counsel was constitutionally ineffective for:

   1) failing to conduct a timely investigation into potential mitigating evidence, thereby emphasizing some evidence while not presenting more persuasive

12

extensively considering each of Hall's arguments, the district

court concluded that Hall received "constitutionally effective

assistance of counsel at his trial" because his attorneys

"conducted reasonable investigations in all areas of the case

> mitigating evidence through additional witnesses and presenting ill-prepared witnesses;
>
> 2) failing to present documentary evidence at the punishment phase of the trial to corroborate testimony;
>
> 3) failing to call available and known witnesses to testify at punishment;
>
> 4) failing to question government witnesses in order to present additional mitigating evidence;
>
> 5) failing to appropriately cross-examine government witness Larry Nichols at the punishment phase;
>
> 6) failing to re-interview a potential defense witness after he appeared to have altered his testimony;
>
> 7) failing to make a closing argument at the guilt phase of the trial;
>
> 8) failing to argue effectively that Hall should have been allowed to make a statement in allocution;
>
> 9) making uninformed and unreasonable decisions regarding their choice and use of witnesses;
>
> 10) failing to adequately argue their motions for continuance;
>
> 11) making an ineffective closing argument at the punishment phase; and
>
> 12) failing to conduct an adequate voir dire.

Dist. Ct. Op. at 16-17. Although Hall has reordered, combined, and separated these twelve grounds in his current application for a COA, they are substantially the same as the grounds considered by the district court.

. . . vigorously cross-examined government witnesses . . . ably argued all objections and points of law; and eloquently defended their client in their closing statements." The government now argues that the "record demonstrates that the [district] court conducted an exhaustive review of each of Hall's claims, and properly denied relief. No COA should issue because no court would resolve Hall's issues in a different manner." Hall believes that each of his twelve grounds was sufficient to support his ineffective assistance of counsel claim, and in his current application for a COA, he argues that reasonable jurists could debate the district court's decision on each of these twelve grounds.

To establish ineffective assistance of counsel, Hall must satisfy a two-part test and show both that his counsel's performance was deficient and that he was actually prejudiced by the deficient performance. Strickland v. Washington, 466 U.S. 668, 687 (1984) (stating that an ineffective assistance of counsel claim has "two components" and requiring convicted defendants to show both that "counsel's performance was deficient" and "that the deficient performance prejudiced the defense"). We determine whether counsel's performance was deficient "by examining whether the challenged representation fell below an objective standard of reasonableness." Cotton v. Cockrell, 343 F.3d 746, 752 (5th Cir. 2003) (citing Kitchens v. Johnson, 190 F.3d 698, 701 (5th Cir. 1999)). Crucially, "a fair

14

assessment" of counsel's challenged conduct requires reviewing courts to make "every effort . . . to eliminate the distorting effects of hindsight . . . and to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Strickland</u>, 466 U.S. at 689. When it has been shown that "'counsel made an adequate investigation,'" we have held that "'any strategic decisions made as a result of that investigation fall within the wide range of objectively reasonable professional assistance.'" <u>Cotton</u>, 343 F.3d at 752 (quoting <u>Smith v. Cockrell</u>, 311 F.3d 661, 668 (5th Cir. 2002)). Of course, even if Hall could establish that his counsel's performance was deficient, satisfying the first step of the <u>Strickland</u> test, he would also have to establish that the "'prejudice caused by the deficiency is such that there is a reasonable probability that the result of the proceedings would have been different[,]'" thereby rendering the trial "'fundamentally unfair or unreliable.'" <u>Cotton</u>, 343 F.3d at 753 (quoting <u>Ransom v. Johnson</u>, 126 F.3d 716, 721 (5th Cir. 1997)). But because, as will be discussed immediately below, no reasonable jurist could debate the district court's conclusion that Hall's counsel provided reasonable, vigorous, and thorough assistance at Hall's trial and sentencing, we need not address this second step of the <u>Strickland</u> test, and so we will not consider whether the errors Hall alleges could have prejudiced his defense.

15

### a.    Hall's Mitigation Arguments

The acknowledged "centerpiece" of Hall's current application

for a COA is his argument that his trial counsel failed to

present various mitigation evidence and arguments at Hall's

sentencing because they failed to conduct an objectively

reasonable investigation into Hall's family background.  We

observed, when considering Hall's direct appeal, that

> [i]n support of his claim that he experienced an
> upbringing that militated against the imposition of the
> death penalty, Hall offered only the testimony of two of
> his family members[5]  .   .   .   .   Additionally,  this
> testimony indicated that Hall was not himself the object
> of his father's abuse and that, throughout his childhood,
> Hall attended school and church and was properly housed,
> fed, and clothed.

Hall, 152 F.3d at 413.  Hall now argues that his upbringing was

somewhat more difficult than we recognized on direct appeal.

More specifically, Hall now argues that he was beaten with belts

and switches by both of his parents, but particularly his father,

as a form of discipline, and he argues that this discipline

constituted abuse.  He also argues that his trial counsel failed

to present evidence of this alleged abuse because they failed to

adequately investigate his background before sentencing, and he

concludes that his trial counsel's failure to present evidence of

---

[5]    The two family members who testified at Hall's trial
were Hall's mother and his sister Cassandra, whose car and
apartment were used in Rene's abduction.  Both offered
uncontroverted testimony that Hall's father beat Hall's mother
throughout their marriage, until the marriage ended in divorce
when Hall was fifteen.  See Hall, 152 F.3d at 413.

this abuse substantially prejudiced his defense at sentencing,
constituting ineffective assistance of counsel. In support of
this argument, Hall submitted several highly detailed
declarations from family members and assorted experts along with
his second amended § 2255 motion.

Although we did not consider some of the allegations
presented in these declarations during Hall's direct appeal, we
did consider the significant evidence, presented by Hall's trial
counsel to the jury, which demonstrated that Hall's upbringing
was marked by violence. As we stated in Hall's direct appeal,
his trial counsel presented uncontroverted evidence that his
mother was repeatedly beaten by his father throughout his
childhood.[6] See Hall, 152 F.3d at 413 (noting the
"uncontroverted testimony that Hall's father . . . beat Hall's
mother throughout their marriage"). Moreover, we observe that in

---

[6] More specifically, Hall's mother testified at trial that
Hall's father:

> was abusive towards her [Hall's mother] during most of
> their marriage including when she was pregnant; that she
> had been beaten with the butt of a gun, by a two-by-four,
> and with fists; that her teeth were knocked out; that she
> was dragged out of bed and beaten . . . after getting
> home from work or from a store; that this was all done in
> front of the children; that the children tried to
> intervene, but would get knocked around themselves; that
> the police were called several times, but arrested
> [Hall's father] on only one occasion; that Hall would
> physically protect her from [Hall's father]; and that she
> stayed with [Hall's father] because she had small
> children and had no place to go . . . .

Dist. Ct. Op. at 27-28 (citing R. 18:113-116).

17

reviewing Hall's argument, "our principal concern . . . is not whether counsel should have presented a mitigation case" of the sort Hall envisions. <u>Wiggins v. Smith</u>, 539 U.S. 510, 523 (2003) (citing <u>Strickland</u>, 466 U.S. at 691). "Rather, we focus on whether the investigation supporting counsel's decision not to introduce mitigating evidence of [Hall's] background <u>was itself reasonable</u>." <u>Id.</u>

To support his current argument that his trial counsel's investigation was objectively unreasonable and therefore deficient, Hall has presented declarations from various experts purporting to show that his trial counsel fell short of then-prevailing professional norms requiring a wide-ranging and thorough inquiry into his family, medical, and social history. Hall believes that these expert declarations demonstrate that his trial counsel failed to conduct sufficiently extensive interviews with his family members about his alleged childhood abuse. At the very least, he argues that these declarations have created a fact question on this issue because they conflict with affidavits given by his trial counsel and submitted by the government defending the sufficiency of the mitigation investigation.

Even if these expert declarations are assumed to be true, no reasonable jurist could debate the district court's conclusion that the mitigation investigation of Hall's counsel was objectively reasonable. To begin, Hall's trial counsel spoke

18

with Hall and presented him with a lengthy questionnaire. From the questionnaire and their initial conversations, Hall's trial counsel learned that Hall felt that he had a reasonably happy and peaceful childhood, although Hall also indicated that he had been whipped when he was bad. Hall's trial counsel also made use of a private investigator to help evaluate and investigate Hall's background. Hall's trial counsel also interviewed Hall's mother and sister Cassandra, who told him that Hall's father had extremely violent tendencies. Based on these interviews, Hall's trial counsel decided to call both women to testify. Hall's trial counsel also employed the services of a mitigation specialist named Tena Francis ("Francis"), who has since submitted multiple declarations castigating Hall's trial counsel for, inter alia, failing to employ her earlier and failing to adopt all of her tactical litigation suggestions. Notwithstanding her subsequent critical declarations, Francis interviewed additional family members and a minister familiar with Hall's childhood and background while she was employed by Hall's trial counsel, and she sent summaries of these interviews to Hall's trial counsel before sentencing.[7]

---

[7] Hall's trial counsel ultimately decided against calling these additional family members as witnesses for tactical reasons. In denying Hall's § 2255 motion, the district court examined this decision and concluded that "[i]t was reasonable . . . not to call as witnesses a father who was opposed to testifying, two brothers who were imprisoned criminals themselves, and a sister who at the time remained hostile to her brother, notwithstanding what they now state they would have

19

Although Hall's experts have attacked some of the strategic and tactical litigation decisions made by Hall's trial counsel, they have not raised serious fact questions about the reasonableness of the investigation upon which those litigation decisions were made. The crux of Hall's current argument is that Hall's trial counsel conducted an insufficient investigation either because counsel was unaware that Hall had been physically abused as a child or because counsel was unaware that the violent discipline inflicted upon Hall constituted abuse.[8] The

---

testified to at trial." Dist. Ct. Op. at 30.

More specifically, Hall's father was opposed to testifying in large part because of his reluctance to admit to his extensive physical abuse of Hall's mother. One of the two brothers in question had been incarcerated for firing a gun into a crowd and injuring nine people; the other brother was in prison for drug possession. Finally, the sister in question was opposed to testifying because "she was very angry . . . at Hall for lying to her about his involvement [in Rene's kidnapping and death] and for involving [their brother] Demetrius Hall [in Rene's kidnapping and death]." Dist. Ct. Op. at 30. No reasonable jurist could debate the district court's conclusion that Hall's counsel acted reasonably in choosing not to call these additional witnesses.

[8] This core of Hall's argument can be found in the declaration of Jill Miller ("Miller"), a forensic social worker, whose declaration was submitted along with Hall's second amended § 2255 motion. In her declaration, Miller stated:

> First, this characterization--that the Hall children were not "abused"--was incorrect. The physical discipline imposed on the children in this family, by both parents, was unduly harsh and rose to the level of abuse. . . . [Furthermore,] the dynamics and effects of family violence cannot be uncovered simply by asking someone if she was "abused." . . . Counsel's examination of these witnesses reflects a failure to grasp this basic principle . . . . At the same time, the true extent and severity of the physical beatings [visited on Hall's

government has provided affidavits from Hall's trial counsel

which contradict these points,[9] but more importantly, this core

of Hall's argument is also clearly and directly contradicted by

the declarations that he has presented and upon which he now

relies.  In both her declaration given on June 11, 2002, and her

declaration given on March 11, 2003, after she reviewed one of

Hall's counsel's affidavits, Francis repeatedly stated that

Hall's trial counsel "was informed, by me [Francis] . . . that

---

> mother and her children] were not communicated by the
> testimony actually presented at [Hall's] penalty phase.

Miller Decl. (June 12, 2002) at 17.

[9] According to one of his trial counsel's affidavits, Hall himself indicated that he had been whipped by his parents during counsel's first interview with Hall, and his subsequent, thorough investigation into Hall's background was based on his knowledge, resulting from extensive experience, "that defendants in that situation cannot necessarily be relied upon to be one-hundred percent truthful and forthcoming."  Ware Aff. (Jan. 15, 2003) at 3, 5.

Hall's counsel also stated that after he directed Francis to interview Hall's additional family members and conduct further background investigation, she "later reported . . . that she was sure that there must have been severe child abuse in the home, including abuse of the defendant . . . ."  However, despite subsequent interviews, counsel was unable to elicit any further information about this alleged abuse from Hall's mother and sister, the witnesses who were reasonably chosen to testify at Hall's sentencing.  Ware Aff. (Jan. 15, 2003) at 20 ("Although I spoke with them on additional occasions neither Cassandra [Hall's sister] nor [Hall's mother] nor the defendant ever said anything that supported Tena Francis's feeling that the defendant must have been physically abused as a child . . . .  When I traveled to Arkansas and again interviewed [Hall's mother], she did not indicate anything of much additional significance on those particular topics, although, once again I asked her about them specifically after . . . explaining the significance of such information.")

21

the Hall children had been subjected to serious domestic violence in the family throughout their childhoods," and she also repeatedly acknowledged that Hall's trial counsel subsequently and repeatedly tried to discuss this issue with Hall's mother, but that "her [Hall's mother's] answers lacked the kind of details I [Francis] had noted in my reports." Therefore, even if the declarations presented by Hall are assumed to be true, Hall's central argument lacks support. Contrary to the conclusory allegations found in Hall's application for a COA and Miller's declaration, it is clear that: Hall's trial counsel was aware that Hall had been subjected to physical discipline as a child; Hall's trial counsel was aware of expert opinions that this discipline constituted abuse; Hall's trial counsel personally conducted further investigation and also directed Francis to conduct further investigation into this issue; and finally, Hall's trial counsel attempted, albeit unsuccessfully, to elicit testimony about this issue from the family witnesses who were reasonably chosen to testify at Hall's sentencing.

In light of Hall's counsel's considerable prior experience and thorough efforts to investigate the potential mitigation case that Hall now describes, no reasonable jurist could debate the district court's conclusion that "Hall's counsel performed a reasonably substantial and independent investigation into potential mitigating circumstances and therefore did not provide ineffective assistance of counsel." Therefore, Hall is not

22

entitled to a COA on this issue.  Moreover, because this conclusion is supported not only by the subsequent affidavits submitted by the government but also by the very declarations upon which Hall now relies, no reasonable jurist could debate the district court's conclusion that the declarations submitted by Hall have failed to "create any contested fact issues." Accordingly, because Hall's expert declarations have failed to create a contested fact issue about the objective reasonableness of his trial counsel's mitigation investigation, no reasonable jurist could debate the district court's decision not to provide an evidentiary hearing to address this issue.  As a result, Hall is not entitled to a COA based on the district court's limitation on the evidentiary hearing.

Contrary to the arguments advanced in Hall's reply brief, our recent decision in Smith v. Dretke, 422 F.3d 369, does not directly control this application for a COA.  In Smith, we granted an application for a COA based in part on our holding that "reasonable jurists could debate whether the [mitigation] investigation that supported trial counsel's strategy at sentencing was reasonable and adequate."  422 F.3d at 284.  In his reply brief, Hall argues that our opinion in Smith illustrates why Hall's application also merits a COA.  But whatever superficial similarities Hall's application may bear to the application we considered in Smith, several critical

23

distinctions prevent the direct application of <u>Smith</u>'s holding to this matter.  Unlike Hall's trial counsel, the trial counsel in <u>Smith</u> could not remember specific details about their background investigation, such as "exactly who they contacted or what was learned from the individuals they contacted," and the record in <u>Smith</u> tended to "support[] the conclusion that trial counsel only contacted those individuals who actually testified at trial," whereas the record in this matter indicates that Hall's trial counsel conducted a much broader investigation.  <u>Id.</u> at 277.  Moreover, unlike Hall's trial counsel, the trial co-counsel in <u>Smith</u> provided substantive statements about the defendant's background which were directly "contrary to the actual testimony presented at sentencing . . . ."  <u>Id.</u> at 281.  Based on these and other shortcomings without parallel in the matter at hand, we held in <u>Smith</u> that "reasonable jurists could debate whether trial counsel conducted a reasonable investigation."  <u>Id.</u>  But because these concerns are not raised by Hall's application for a COA, <u>Smith</u> does not control this application for a COA.

### b.    Hall's Additional Ineffective Assistance of Counsel Arguments

In addition to the mitigation arguments discussed above, Hall has provided six additional specific ineffective assistance of counsel arguments which he believes merit a COA.  First, Hall argues that his trial counsel failed to adequately prepare for and cross-examine Larry Nichols, a former cellmate of Hall's.

24

Second, Hall argues that his trial counsel failed to obtain an opportunity for allocution for Hall. Third, Hall argues that his trial counsel failed to effectively argue several motions for a continuance. Fourth, Hall argues that his trial counsel failed to effectively conduct voir dire. Fifth, Hall argues that his trial counsel failed to present an effective closing argument. Sixth, Hall argues that his trial counsel failed to present adequate evidence of Hall's good conduct during his past incarceration. The district court reviewed all of these claims individually and in detail before denying Hall's ineffective assistance of counsel claim, and no reasonable jurist could debate the district court's conclusions. These arguments each "essentially come[] down to a matter of degrees[,]" and we have held in the past that these sorts of questions "are even less susceptible to judicial second-guessing" than most ineffective assistance of counsel arguments. Kitchens, 190 F.3d at 703; see also Dowthitt v. Johnson, 230 F.3d 733, 743 (5th Cir. 2000) (citing Kitchens and Strickland, and stating the need to be "particularly wary" of arguments that second-guess the performance of trial counsel by a matter of degrees). Because Hall has offered little more than his displeasure with the outcome of his trial and sentencing hearing to support these arguments, no reasonable jurist could debate the district court's decision to deny him relief on these grounds, and no reasonable jurist could debate the district court's refusal to consider

25

these grounds during its evidentiary hearing.  Therefore, Hall is not entitled to a COA on these substantive issues, and he is not entitled to a COA based on the district court's decision to limit the evidentiary hearing.

Hall also claims that he is entitled to a COA on his ineffective assistance of counsel claim because of the cumulative effect of the various errors he alleges.  Our clear precedent indicates that ineffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions.  See Miller v. Johnson, 200 F.3d 274, 286 n.6 (5th Cir. 2000) (stating that in the absence of specific demonstrated error, a defendant cannot, by definition, show that cumulative error of counsel deprived him of a fair trial); Yohey v. Collins, 985 F.2d 222, 229 (5th Cir. 1993) (stating that because certain alleged errors did not rise to constitutionally ineffective assistance of counsel, and because certain other claims were meritless, a petitioner had "presented nothing to cumulate").  Accordingly, no reasonable jurist could debate the district court's conclusion that the cumulative effect of the alleged errors did not constitute ineffective assistance of counsel, and Hall is not entitled to a COA on this issue.

### 2.    Hall's Extraneous Influence on the Jury Claim

Hall's extraneous influence on the jury claim is based on two incidents that allegedly occurred during the trial.  First,

Hall alleges that juror Jacqueline Holmes ("Holmes") had contact during Hall's trial with Hall's victim's mother. This first allegation is based on letters allegedly written by Holmes to Hall in prison after the conclusion of Hall's trial. Second, Hall alleges that at least one juror--who may or may not have been Holmes--attended an event at which prayers were offered for Hall's victim.

As discussed above, the district court conducted an evidentiary hearing to resolve this claim on June 7, 2004, and at this hearing, Holmes testified under oath. With respect to Hall's first allegation, Holmes admitted that she had written letters to Hall after the trial. She also admitted that in these letters she stated that she had met Hall's victim's mother during the course of the trial. At the evidentiary hearing, however, Holmes maintained that these post-trial letters to Hall were not true: she testified that she had never met the victim's mother, and she claimed that she had lied in her letters in order to encourage Hall's correspondence with her. With respect to Hall's second allegation, Holmes testified that she had not attended any prayer ceremony of the sort described by Hall, nor was she aware of any other juror who had done so. Id.

With respect to Hall's first allegation, the district court found Holmes's testimony during the evidentiary hearing "to be credible," and therefore ruled that "Hall has not established

27

that any inappropriate ex parte contact occurred." With respect

to Hall's second allegation, the district court stated that even

> [a]ssuming that this allegation is indeed true, and [a juror] attended [a prayer ceremony], it is not evidence that there was <u>any</u> outside influence on the jury. Instead Hall offers merely <u>speculation</u> that there may have possibly been some unknown person at the [prayer ceremony] who said something to the juror that influenced her vote. Mere speculation that some discussion between a juror and an unknown person occurred does not establish that extrinsic evidence entered the jury deliberations, especially where Jacqueline Holmes's sworn testimony is that she does not recall any juror discussing a [prayer ceremony], much less any prayer offered on behalf of the victim [during the jury's deliberations].

<u>Id.</u> at 66-67.

In his current application, Hall argues that he is entitled

to a COA on this extraneous influence on the jury claim because

reasonable jurists could debate the district court's conclusion

and with the limitations the district court imposed on the

evidentiary hearing it held on this issue.[10] But by holding the

evidentiary hearing, the court provided Hall with sufficient

opportunity to investigate his first allegation about Holmes's

---

[10] In particular, Hall argues that the evidentiary hearing was insufficient because Hall lacked access to videotaped interviews with the jurors. In response, the government observes that "[s]ecuring a copy of the broadcast [interviews] . . . would bring Hall no closer to showing an illegal or prejudicial intrusion into the jury process" because Hall's allegations still fail to demonstrate "that any extraneous evidence was introduced into the jury's deliberations, or that any juror violated the court's instructions to forego discussion about the case outside of the deliberation process, especially given the testimony from Holmes." Gov't Br. at 31 (citing, inter alia, <u>United States v. Riley</u>, 544 F.2d 237, 242 (5th Cir. 1976); <u>United States v. Ianniello</u>, 866 F.2d 540, 543 (2d Cir. 1989)).

conduct, and it found Holmes's direct testimony credible. No reasonable jurist could find fault with either the district court's method or conclusion, particularly in light of the limitations on a juror's testimony on any individual juror's deliberations or the jury's collective deliberations. <u>See, e.g.</u>, <u>United States v. Ruggiero</u>, 56 F.3d 647, 652 (5th Cir. 1995) (reviewing the limitations on subsequent testimony about juror deliberations set forth by this court's precedent and Federal Rule of Evidence 606(b)). With respect to Hall's second allegation, no reasonable jurist could debate the district court's conclusion that Hall has merely offered speculative and conclusory allegations that "are insufficient to raise a constitutional issue." <u>United States v. Pineda</u>, 988 F.2d 22, 23 (5th Cir. 1993) (quoting <u>United States v. Woods</u>, 870 F.2d 285, 288 n.3 (5th Cir. 1989)).

### 3. Hall's Incomplete Indictment Claim

In his second amended § 2255 motion, Hall claimed that the original indictment against him violated his Fifth Amendment rights because it did not allege the aggravating circumstances and the culpable mental state that made him eligible for the death penalty. The district court denied this claim for relief, after applying our recent precedent and the recent precedent of the Supreme Court. <u>See</u> Dist. Ct. Op. at 13-16 (citing, inter alia, <u>Schirro v. Summerlin</u>, 542 U.S. 348 (2004), <u>United States v.</u>

29

<u>Robinson</u>, 267 F.3d 278 (5th Cir. 2004), <u>United States v.</u>

<u>Matthews</u>, 312 F.3d 652 (5th Cir. 2002), and <u>United States v.</u>

<u>Brown</u>, 305 F.3d 304 (5th Cir. 2002)). In his current application

for a COA, Hall acknowledges the contrary precedent of this court

and the Supreme Court cited by the district court--precedent that

we must follow. Because Hall concedes in a footnote that he has

included this claim in his current application in order "to

preserve this issue for further review[,]" we will not consider

this claim any further.

### 4. Hall's Prosecutorial Misconduct Claim

Hall's prosecutorial misconduct claim revolves around Larry

Nichols ("Nichols"), one of Hall's fellow inmates who provided

testimony against Hall during the sentencing phase of Hall's

trial. More specifically, Hall now claims that the government

concealed Nichols's full criminal history from Hall, violated

Hall's Sixth Amendment rights by deliberately using Nichols to

elicit information from Hall outside the presence of Hall's

counsel, and encouraged or tolerated perjury by Nichols.

In denying Hall's § 2255 motion, the district court held

that these claims of prosecutorial misconduct lacked factual

support. The district court found, based on a review of the

trial record and an affidavit from Hall's trial counsel, that the

government did not withhold any information about Nichols's prior

criminal conduct from Hall's trial counsel. The district court

also recognized that Hall's Sixth Amendment rights were not violated for two reasons: first, because Nichols's testimony directly contradicts Hall's claims; and second, because the very text of the report Hall selectively cites undercuts his claims. Finally, the district court found that Hall failed to show that Nichols's allegedly false statements about his prior criminal behavior or his prior contact with the government were material. See, e.g., O'Keefe v. United States, 128 F.3d 885, 893-94 (5th Cir. 1997) (stating that a conviction obtained through the use of false testimony cannot be overturned unless the allegedly false statements were material). Because no reasonable jurist could debate the district court's conclusions, no COA should issue on Hall's claim of prosecutorial misconduct. Additionally, because Hall has failed to raise any contested fact issues about the alleged prosecutorial misconduct, no reasonable jurist could debate the district court's decision not to provide an evidentiary hearing to address this issue, and Hall is not entitled to a COA based on the district court's limitation on the evidentiary hearing.

### 5. Hall's Selective Prosecution Claim

Hall also argues that a COA should issue because reasonable jurists could conclude the district court erred in denying Hall's selective prosecution claim. In denying Hall's § 2255 motion, the district court found that Hall's statistics fell short of

31

establishing a prima facie selective prosecution case under the standard set forth in <u>United States v. Armstrong</u>, 517 U.S. 456 (1996). <u>Armstrong</u> requires a defendant such as Hall to show that federal prosecutorial policy had both a discriminatory effect <u>and</u> a discriminatory intent; in this matter, as the district court and the government both point out, Hall has not provided any direct evidence of discriminatory intent. Furthermore, the district court noted that Hall's statistical evidence is similar to evidence rejected by this court in the past. Dist. Ct. Op. at 86-87 (citing, inter alia, <u>United States v. Jones</u>, 287 F.3d 325, 333-35 (5th Cir. 2002); <u>United States v. Webster</u>, 162 F.3d 308, 333-35 (5th Cir. 1999)). Because no reasonable jurist could debate the district court's conclusions, no COA should issue on this claim. Additionally, because Hall has failed to raise any contested fact issues about the alleged selective prosecution, no reasonable jurist could debate the district court's decision not to provide an evidentiary hearing to address this issue, and Hall is not entitled to a COA based on the district court's limitation on the evidentiary hearing.

**B. Hall's Procedural Claims**

In addition to the substantive and procedural claims considered above, Hall has raised two other procedural claims in

this application for a COA.[11] First, Hall argues that a COA is appropriate because reasonable jurists could debate the district court's blanket denial of discovery. Second, Hall argues that the district court's denial of Hall's request for funds to develop evidence merits a COA. In explaining why none of Hall's substantive claims merits a COA, we have also explained why the district court's decision to limit the evidentiary hearing does not merit a COA. Similarly, because Hall has not raised any contested fact issues that might entitle him to relief, no reasonable jurist could debate the district court's decisions to deny his motions for discovery.

We now turn to Hall's final remaining claim, that a COA should issue because the district court denied him "reasonably necessary funds" to develop supporting evidence. In responding to Hall's denial of funds claim, the government observes that Hall has wholly failed to identify any specific needs for additional post-conviction funded investigation. Moreover, as the government also observes, despite this alleged lack of sufficient funding, Hall has provided several expert declarations and evaluations related to his ineffective assistance of counsel claim. In the past, "this court has held that a COA is not

---

[11] In his application for a COA, Hall also argued that this case should be reassigned if a remand was necessary in order to foreclose any claim of waiver. Because we have denied his application for a COA without remanding any issue to the district court, this claim is mooted.

necessary to appeal the denial of funds for expert assistance,"
reviewing such claims directly for abuse of discretion. <u>Smith</u>,
422 F.3d at 288 (citing <u>Hill v. Johnson</u>, 210 F.3d 481, 487 n.3
(5th Cir. 2000)).

Most of our past holdings, however, relied on the text of 21
U.S.C. § 848(q)(4)(B), which was recently repealed by the USA
Patriot Improvement and Authorization Act of 2005, Pub. L. No.
109-177, Title II, §§ 221(4), 222(c), 120 Stat. 192, 231-32
(2006). <u>See</u> <u>Smith</u>, 422 F.3d at 287-88 (relying upon the text of
21 U.S.C. § 848(q)(4)(B)); <u>Hill</u>, 210 F.3d at 487 n.3 (stating
that "[a] COA is not required for appeals under § 848(q)(4)(B)");
<u>cf.</u> <u>Jackson v. Dretke</u>, No. 05-70014, 2006 WL 1308063, at *10 (5th
Cir. May 11, 2006) (citing <u>Hill</u> and <u>Smith</u>, without citing any
statutory provision, and stating that a "COA is not required to
appeal the denial of funds for expert assistance"). Moreover,
the government's brief, which predates the enactment of the USA
Patriot Improvement and Authorization Act of 2005, does not
request direct review and the abuse of discretion standard, but
instead simply claims that Hall's claim for a COA based on
insufficient funding lacks all merit. In any event, because Hall
has not pointed to any specific needs or limitations caused by
the alleged lack of funds, his funding claim fails whether it is
considered as a claim for a COA or a claim on direct review. No
reasonable jurist could debate the district court's funding
decisions, and therefore the district court's decision to deny

34

Hall's overbroad funding requests could not have been an abuse of discretion.

### III. CONCLUSION

For the reasons discussed above, Hall's application for a COA is DENIED.

LEXSEE 88 FED. APPX. 15

**UNITED STATES OF AMERICA, Plaintiff - Appellee v. SERGIO ALANIS, also known as Sergio Alaniz, also known as La Paca, Defendant - Appellant**

**No. 02-21135**

**UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT**

*88 Fed. Appx. 15; 2004 U.S. App. LEXIS 2149*

**February 10, 2004, Filed**

**NOTICE:** [**1] RULES OF THE FIFTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** Appeal from the United States District Court for the Southern District of Texas, Houston. No. H-97-CR-153-9. *United States v. Alanis, 234 F.3d 705, 2000 U.S. App. LEXIS 27103 (5th Cir. Tex., 2000)*

**DISPOSITION:** Affirmed in part, vacated and remanded in part.

**JUDGES:** Before KING, Chief Judge, and JONES and SMITH, Circuit Judges.

**OPINION:** [*16] PER CURIAM: *

> \* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Sergio Alanis, a federal prisoner, appeals the district court's dismissal of his § 2255 motion. He attacks his convictions and sentences on several grounds, including ineffective assistance of counsel, prosecutorial misconduct, and violations of *Apprendi v. New Jersey, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000)*. We affirm in part, vacate in part, and remand to the district court for further factual [**2] development on Alanis's ineffective-assistance-of-trial-counsel claim.

### I. Background

In February 1999, a federal jury convicted Sergio Alanis of (1) conducting a continuing criminal enterprise ("CCE"), (2) two counts of aiding and abetting possession with intent to distribute marijuana, (3) money laundering, and (4) conspiracy to launder money. Later that spring, the district court sentenced him to, inter alia, 240 months in prison on each count and ordered that the sentences be served concurrently. In September 2001, after unsuccessfully appealing his convictions, Alanis filed a motion to vacate, set aside, or correct his sentence under *28 U.S.C. § 2255*. The district court denied Alanis's § 2255 motion without holding a hearing on any of his claims.

Following the district court's refusal to grant Alanis a certificate of appealability (a "COA"), we granted Alanis a COA regarding the following issues: (1) whether his trial counsel rendered ineffective assistance by failing to file a motion to suppress the evidence obtained during the warrantless search of Alanis's house in light of David Pena-Garcia's affidavit regarding that search; (2) whether [**3] his trial counsel's alleged ineffectiveness concerning the *Fourth Amendment* claim suffices to overcome Alanis's procedural default on that claim; (3) whether the sworn affidavit from Jose Garcia is newly discovered evidence that proves that the prosecution knowingly used perjured testimony at Alanis's trial; (4) whether the district court should have conducted an evidentiary hearing to consider whether the prosecution knowingly used perjured testimony at Alanis's trial; (5) whether Alanis's convictions for aiding and abetting possession with intent to distribute marijuana are invalid under Apprendi because a drug quantity was not alleged in the indictment or submitted to the jury; and (6) whether his appellate counsel was ineffective for failing to raise the Apprendi issue on direct appeal.

### II. Standard of Review

When considering a district court's denial of a § 2255 motion, we review factual [*17] findings for clear error and conclusions of law de novo. See *United States*

*v. Stricklin, 290 F.3d 748, 750 (5th Cir. 2002)*. A district court's conclusions regarding a claim of ineffective assistance of counsel involve mixed questions of law and fact, which we [**4] review de novo. See *United States v. Bass, 310 F.3d 321, 325 (5th Cir. 2002)*. Further, we review for abuse of discretion the district court's decision not to hold a hearing. See *United States v. Bartholomew, 974 F.2d 39, 41 (5th Cir. 1992)*.

### III. Discussion

#### A. Trial Counsel's Failure to Pursue the *Fourth Amendment* Claim

We granted a COA regarding whether Alanis's trial counsel rendered ineffective assistance by failing to file a motion to suppress the evidence obtained during the warrantless search of Alanis's house in light of David Pena-Garcia's affidavit regarding that search. n1 To obtain relief on his ineffective-assistance-of-counsel claim, Alanis must show both that his counsel's performance was deficient (i.e., that it "fell below an objective standard of reasonableness") and that he was prejudiced by his counsel's deficient performance. See *Strickland v. Washington, 466 U.S. 668, 687-88, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984)*. Regarding the first prong, we must be "highly deferential" when evaluating counsel's performance; a strong presumption exists that the representation was reasonable. *Id. at 689*. "The [**5] defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (citation and internal quotation marks omitted). If Alanis shows that his counsel's performance was deficient, he then must demonstrate prejudice. See *id. at 691, 693-94*. To do so, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id. at 694*. Further, the Supreme Court has refined the prejudice inquiry in the context of ineffective-assistance claims based on counsel's failure to file a motion to suppress:

> Where defense counsel's failure to litigate a *Fourth Amendment* claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his *Fourth Amendment* claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

*Kimmelman v. Morrison, 477 U.S. 365, 375, 91 L. Ed. 2d 305, 106 S. Ct. 2574 (1986)*. [**6]

n1 Alanis contended on direct appeal that his trial counsel rendered constitutionally ineffective assistance. We declined to consider the claim, citing the general rule "that a claim of ineffective assistance of counsel cannot be resolved on direct appeal when the claim has not been raised before the district court since no opportunity existed to develop the record on the merits of the allegations." *United States v. Alanis, 234 F.3d 705, slip op. at 4 (5th Cir. 2000)* (per curiam) (citing *United States v. Navejar, 963 F.2d 732, 735 (5th Cir. 1992)*); cf. *Massaro v. United States, 538 U.S. 500, 123 S. Ct. 1690, 1696, 155 L. Ed. 2d 714 (2003)* (holding "that failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255").

At trial, a police officer testified that Pena-Garcia, Alanis's father-in-law, informed the officer that he was in control of Alanis's residence [**7] and verbally consented to a search of the premises, during which officers seized $ 40,970 in currency. But, when Alanis filed his § 2255 motion in the [*18] district court, Alanis submitted a sworn, post-conviction affidavit from Pena-Garcia stating that he neither consented to the search nor informed the officer that he was in control of the premises. Alanis contends that his trial counsel rendered ineffective assistance because the lawyer failed to file a motion to suppress the evidence obtained during the warrantless search of Alanis's house. He further asserts that his trial counsel was ineffective for failing to investigate the validity of that warrantless search.

"A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989)*. Although Alanis fails to allege specifically that Pena-Garcia was willing to testify on behalf of Alanis during a suppression hearing, we liberally construe the pleadings of those who proceed pro se. See *Haines v. Kerner, 404 U.S. 519, 520-21, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972)*. [**8] Alanis's brief does assert that his trial counsel's decision not to file a suppression motion could not have been the product of either a considered trial strategy or a

reasonable investigation. According to Alanis, a nondeficient lawyer would have explored the circumstances surrounding the search, since it was conducted without a warrant and the individual who allegedly consented to the search (Pena-Garcia) refused to sign a written consent form. Moreover, both Alanis and Pena-Garcia allege that the search of Alanis's house was conducted without consent, and the record does not indicate that Pena-Garcia would have testified otherwise if called for a suppression hearing.

The district court concluded, however, that Alanis had not satisfied either prong of the *Strickland* test. First, defense counsel's performance was not deficient, according to the district court, since--considering the officer's testimony that Pena-Garcia consented to the search and the substantial evidence of money laundering--the decision not to file a motion to suppress "can reasonably be attributed to trial strategy." Second, the court, assuming for the sake of argument that counsel's performance fell below [**9] an objective standard of reasonableness, also concluded that Alanis had not shown that counsel's failure to move to suppress the currency prejudiced his defense. In the district court's view, Alanis failed to prove that he would have been found not guilty of money laundering, since the government introduced substantial evidence at trial regarding the money-laundering count. n2 The [*19] district court's opinion does not explicitly consider whether Alanis is entitled to a hearing on this *Sixth Amendment* claim.

---

n2 But the district court failed to consider that the count of money laundering with which Alanis was charged and convicted accused him of laundering the very currency found during the now-disputed search. Specifically, count nine of the second superceding indictment states the following:

On or about January 26, 1994, in the Southern District of Texas and elsewhere, and within the jurisdiction of this Court,

SERGIO ALANI[S], a/k/a Sergio Alaniz and La Paca, defendant herein . . . did knowingly and willfully conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, the transfer, delivery or other disposition of U.S. Currency,

which involved the proceeds of a specified unlawful activity, namely, a violation of Title *21, United States Code, Sections 841, 846 and 848*, with the intent to promote the carrying on of said specified unlawful activity and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction, that is, funds, amounting to approximately $ 40,970.00, represented the proceeds of some form of unlawful activity.

In violation of Title *18, United States Code, Sections 2, 1956(a)(1)(A)(i)* and *1956(a)(1)(B)(i)*

(emphasis added).

[**10]

A *§ 2255* motion "can be denied without a hearing only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *Bartholomew, 974 F.2d at 41*; accord *Friedman v. United States, 588 F.2d 1010, 1014-15 (5th Cir. 1979)*; see also *28 U.S.C. § 2255 (2000)*. See generally *Machibroda v. United States, 368 U.S. 487, 494-96, 7 L. Ed. 2d 473, 82 S. Ct. 510 (1962)*. The determination of whether to conduct a hearing on a *§ 2255* motion involves two steps. See *Friedman, 588 F.2d at 1015*. First, the court examines whether the record conclusively negates the factual predicates asserted in support of the motion. *Id.* If not, the court next determines whether the movant would be entitled to relief if his factual allegations are true. *Id.* If he would be entitled to relief, then the district court must conduct a hearing to ascertain the validity of the movant's factual assertions. On the state of this record, we conclude that further factual development is required (which may include a hearing) regarding Alanis's ineffective-assistance-of-trial-counsel claim.

Regarding [**11] the first step in the Friedman analysis, we find that the record does not conclusively negate Alanis's allegation that his counsel's decision not to file a motion to suppress was the product of the lawyer's failure to conduct a reasonable investigation into the circumstances surrounding the search. While "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland, 466 U.S. at 690-91.* In rejecting Alanis's claim, the district court determined that defense counsel's failure to file a motion to suppress was based on sound trial strategy. But the basis for this conclusion is not readily apparent from the record. If the testimony of the officer conducting the search were uncontroverted, the district court's conclusion would certainly be warranted. But the district court failed to address (1) the conflict between Pena-Garcia's affidavit and the officer's testimony, (2) whether that conflict existed before [**12] trial, or (3) whether trial counsel was aware of, or should have been aware of, the existence of that conflict. Thus, we know little about what, if any, investigation Alanis's trial counsel took before deciding not to file a motion to suppress the seized currency, and thus, we cannot say that the record conclusively negates Alanis's factual allegations.

Additionally, the record does not conclusively negate Pena-Garcia's allegation that he did not consent to the search. The affidavit conflicts with the officer's trial testimony. Consequently, further factual development is required to determine who is telling the truth. See *Friedman, 588 F.2d at 1015* (stating "that contested fact issues in § 2255 cases cannot be resolved on the basis of affidavits"); see also *Taylor v. United States, 287 F.3d 658, 660 (7th Cir. 2002)* (stating, in the context of a § 2255 motion, that "if the record contains an evidentiary conflict on a material issue [*20] of fact, a judge must hold an evidentiary hearing to decide who is telling the truth"). The resolution of this factual question will determine the validity of Alanis's *Fourth Amendment* claim, which is an element of the [**13] Strickland prejudice inquiry in these circumstances.

We now turn to the second step of the Friedman analysis--whether Alanis's factual allegations would entitle him to relief if true. The government relies on *United States v. Chavez-Valencia, 116 F.3d 127, 134 (5th Cir. 1997),* to support the district court's assertion that Alanis's claim is facially invalid because he "fails to demonstrate that [his lawyer's] election not to file a motion to suppress was not based on a conscious or informed trial tactic." But the defendant in Chavez-Valencia attempted to raise his ineffective-assistance-of-counsel claim on direct appeal. See *id. at 128.* Because the record was not sufficiently developed to allow us to review the claim, we denied it without prejudice to collateral review, stating that "without knowing the reason for failing to file a pretrial motion, this court is not positioned to review the competency of representation Chavez received." *Id. at 134.* We are in a similar position here. While we recognize "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy," *Strickland, 466 U.S. at 689* [**14] (internal quotation marks omitted), we also note that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," *id. at 691.* Again, at this stage, we do not know what investigation Alanis's trial counsel conducted regarding whether to file a motion to suppress the currency. Thus, we cannot, without the benefit of further factual development, agree that the attorney's performance was not deficient.

In addition, Alanis's attack on his conviction for money laundering cannot be rejected on the prejudice prong of Strickland. If it is determined that Pena-Garcia did not consent to the search, exclusion of the currency would be appropriate, since the officers who searched Alanis's residence did not obtain a warrant. Further, Alanis was convicted of laundering the very currency found during the now-disputed search of his residence. n3 A reasonable probability therefore exists that the suppression of that currency would have prevented Alanis's conviction for laundering it. n4 Consequently, if Alanis's assertion that his trial counsel failed to conduct a reasonable investigation before deciding [**15] not to file a motion to suppress the currency proves true, he will be entitled to relief.

n3 See supra note 2.

n4 Alanis also contends that the admission of the currency significantly influenced the results concerning his other counts of conviction. The district court did not explicitly find that Alanis had failed to satisfy Strickland's prejudice requirement regarding his convictions on the other counts. Nevertheless, our review of the record reveals that substantial evidence, besides the seized currency, supports the other counts of conviction. Accordingly, we affirm the district court's rejection of Alanis's *Sixth Amendment* claim insofar as it relates to his other counts of conviction.

Considering Pena-Garcia's affidavit, we cannot conclude that Alanis's " *§ 2255* motion, together with the files and records of the case, conclusively show that under no circumstances would [Alanis] be entitled to relief" from his conviction for money laundering. *Friedman, 588 F.2d at 1017.* As [**16] we stated in Friedman,

> We do not, of course, pretend to prejudge this . . . issue . . . . Nor do we predict or intimate the legal consequences of any findings or holdings on the matter[] remanded for further hearing. [*21] The point is that we do not know, nor does the District Court know, whether [Defendant]'s allegations are indeed true and whether, as a consequence, he was unconstitutionally deprived of . . . effective assistance of counsel when he was convicted and sentenced.

Id. Accordingly, we remand for further factual development on this claim.

## B. Unconstitutional Search and Seizure

In his *§ 2255* motion, Alanis contends that his conviction was obtained through the use of evidence (namely, the currency discussed above) seized during an unconstitutional search. Because Alanis raised this claim for the first time in his *§ 2255* motion, his claim is procedurally barred unless he can show "both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *United States v. Shaid, 937 F.2d 228, 232 (5th Cir. 1991)* (en banc). "Absent unusual circumstances, ineffective assistance of counsel, if shown, is sufficient [**17] to establish the cause and prejudice necessary to overcome a procedural default." *United States v. Walker, 68 F.3d 931, 934 (5th Cir. 1995).* Thus, we granted a COA concerning whether Alanis's trial counsel's alleged ineffectiveness constitutes both cause for Alanis's failure to challenge the search and seizure during his criminal proceedings and actual prejudice due to counsel's alleged error.

Even if he can show ineffective assistance and thereby overcome the procedural bar, Alanis's *Fourth Amendment* claim probably is not cognizable in this *§ 2255* proceeding. The Supreme Court held in *Stone v. Powell, 428 U.S. 465, 494-95, 49 L. Ed. 2d 1067, 96 S. Ct. 3037 & n.37 (1976),* that state prisoners collaterally attacking their convictions under *§ 2254* cannot obtain relief for violations of the *Fourth Amendment* exclusionary rule when the prisoner was provided a full and fair opportunity to litigate the *Fourth Amendment* issue in the state courts. Interpreting the "full-and-fair-opportunity" requirement in the *§ 2254* context, we have stated that when a defendant fails to raise his *Fourth Amendment* claim at trial (as occurred here), then Stone precludes habeas relief [**18] on *Fourth Amendment* grounds, even though no state hearing was held on the claim. See *Caver v. Alabama, 577 F.2d 1188, 1192 (5th Cir. 1978)* ("An 'opportunity for full and fair litigation' means just that: an opportunity. If a state provides the processes whereby a defendant can obtain full and fair litigation of a *fourth amendment* claim, Stone v. Powell bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes."). n5 We have also held that the Stone rule can be raised by a court sua sponte. See *Davis v. Blackburn, 803 F.2d 1371, 1372-73 (5th Cir. 1986)* ("We are obliged to apply Stone as a prudential limitation on the exercise of our jurisdiction . . ., even if it must be raised sua sponte."). Thus, it would appear that the government's failure to assert the Stone bar does not prevent us from applying it to Alanis's claim. But the applicability of Stone in *§ 2255* proceedings is somewhat unclear. While the Supreme Court has not definitively resolved the question, dicta in *United States v. Johnson, 457 U.S. 537, 562 n.20, 73 L. Ed. 2d 202, 102 S. Ct. 2579 (1982),* indicates that the [**19] doctrine does apply here. n6

> n5 Alanis fails to allege that the district court would not have provided a full and fair opportunity for him to litigate his *Fourth Amendment* claim had he raised it.

> n6 Regardless whether the rule precludes his *Fourth Amendment* claim, Stone does not bar Alanis's *Sixth Amendment* claim that his trial counsel's failure to file a motion to suppress the currency amounted to constitutionally ineffective assistance. See *Kimmelman, 477 U.S. at 382-83.*

In light of our disposition of the ineffective-assistance-of-trial-counsel claim, however, [*22] we do not need either to consider the merits of Alanis's *Fourth Amendment* claim or to decide whether Stone would preclude it. If the district court determines that Alanis's trial counsel rendered constitutionally ineffective assistance due to the lawyer's failure to file a motion to suppress, Alanis will have satisfied the cause-and-prejudice standard, see *Walker, 68 F.3d at 934,* which would allow him to [**20] pursue his *Fourth Amendment* claim. In other words, Alanis's *Fourth*

*Amendment* claim is procedurally barred unless he first succeeds on his *Sixth Amendment* claim. Further, if he succeeds on his *Sixth Amendment* claim, he will have established the validity of his *Fourth Amendment* claim because the merits of his *Fourth Amendment* claim are an element of his ineffective-assistance-of-trial-counsel claim. See *Kimmelman, 477 U.S. at 375, 382.* n7 Finally, the relief sought in Alanis's *Fourth Amendment* claim is identical to the relief sought in his ineffective-assistance-of-trial-counsel claim. Accordingly, since (1) Alanis cannot pursue his *Fourth Amendment* claim unless he prevails on his *Sixth Amendment* claim n8 and (2) if he prevails on his *Sixth Amendment* claim he will be entitled to all relief that would be available to him if he succeeded on his *Fourth Amendment* claim, we need not concern ourselves further with Alanis's *Fourth Amendment* claim.

N7 Note also that if Alanis can show--as required by Strickland--that there is a reasonable probability that, but for counsel's failure to file a motion to suppress, he would not have been convicted on one or more of the counts, he will have conclusively shown that the admission of the currency was not harmless regarding such count(s). See *Kyles v. Whitley, 514 U.S. 419, 435-36, 131 L. Ed. 2d 490, 115 S. Ct. 1555 (1995).*
[**21]

n8 Even then, Stone probably precludes Alanis from litigating his *Fourth Amendment* exclusionary-rule claim in this § 2255 proceeding.

## C. Prosecutorial Misconduct

Alanis contends that the government prosecutor knowingly elicited false trial testimony from government witness Jose Garcia. He attached to his § 2255 motion a sworn, postconviction affidavit from Jose Garcia supporting his assertion. Due process is violated when the prosecution knowingly offers false testimony to obtain a conviction and fails to correct such testimony. *Tucker v. Johnson, 242 F.3d 617, 625-26 (5th Cir. 2001)*; see also *Burton v. United States, 237 F.3d 490, 493 (5th Cir. 2000).* To obtain relief, Alanis must prove (1) that the statements in question are false; (2) that the government knew of their falsity; and (3) that the statements were material. *Tucker, 242 F.3d at 626.*

Because Alanis failed to raise this contention either at trial or on direct appeal, he must first show "both 'cause' for his procedural default, and 'actual prejudice' resulting from [**22] the error." *Shaid, 937 F.2d at 232.* If Garcia's affidavit was not available to Alanis until after his direct appeal was decided, this would establish cause for his failure to raise this claim earlier. See *Murray v. Carrier, 477 U.S. 478, 488, 91 L. Ed. 2d 397, 106 S. Ct. 2639 (1986)* (stating "that a showing that the factual or legal basis for a claim was not reasonably available to counsel" satisfies the cause requirement for overcoming a procedural default). Whether Alanis can establish actual prejudice will depend on the validity of his prosecutorial-misconduct claim, for the Supreme Court has treated the materiality element of such a claim "as coterminous with the 'prejudice' prong of the procedural default doctrine." 2 RANDY [*23] HERTZ & JAMES S. LIEBMAN, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE § 26.3c, at 1221-22 (4th ed. 2001) (citing cases).

Alanis's assertion that the government knowingly elicited false testimony was one of several allegations of government misconduct presented in his § 2255 motion. In its opinion, the district court did not mention the affidavit from Garcia. Nevertheless, the court rejected Alanis's government-misconduct claim in its entirety, [**23] stating that the claim was unsupported and procedurally barred. Thus, it implicitly concluded that each of Alanis's allegations of misconduct lacks merit. We affirm the district court's ruling on this issue because we find that, even if Alanis's allegations concerning the Garcia affidavit are true, Alanis would not be entitled to relief. This is because, as the government shows in its brief, Garcia's testimony was not material.

Garcia's testimony was relevant to the CCE count and one of the counts for aiding and abetting possession with intent to distribute marijuana (i.e., the count charging Alanis with aiding and abetting the possession with intent to distribute marijuana on or about November 14, 1996, which was one of the predicate acts that formed the basis of his CCE conviction). On November 14, 1996, Texas state troopers arrested Garcia, who was driving a truck loaded with 597 pounds of marijuana. Garcia testified at trial that Alanis hired him to drive the truck containing the marijuana. In his subsequent affidavit, however, Garcia stated that, when he testified at trial, he knew nothing about Alanis's involvement with the shipment of marijuana. Instead, Garcia asserted in [**24] the affidavit that the prosecutor instructed him to implicate Alanis and that Garcia did so in return for leniency.

Perjured testimony is material "if there is any

reasonable likelihood that the false testimony could have affected the judgment of the jury." *Creel v. Johnson, 162 F.3d 385, 391 (5th Cir. 1998)* (citations and internal quotation marks omitted). Garcia's allegedly false trial testimony concerning Alanis's involvement with the November 1996 shipment of marijuana is not material because at trial the government introduced substantial additional evidence connecting Alanis both to the shipment and to Garcia. For example, at trial, an FBI agent testified about several electronically intercepted telephone conversations between Garcia and Alanis during which the two men discussed the November 1996 shipment of drugs. Moreover, in his closing argument, the prosecutor did not once mention Garcia's testimony in connection with the November 1996 aiding and abetting possession with intent to distribute count. n9 Accordingly, because Garcia's allegedly false testimony was not material to the jury's verdicts, we affirm the district court's judgment regarding Alanis's [**25] prosecutorial misconduct claim. n10

n9 And he only referenced Garcia's testimony twice, briefly, in discussing the CCE count.

n10 As we find that Alanis's prosecutorial misconduct allegation is without merit, we consequently reject Alanis's contention that he should be allowed an evidentiary hearing on this issue.

### D. Apprendi Violation and Ineffective Assistance of Counsel on Appeal

We also granted a COA regarding Alanis's contention that his convictions for aiding and abetting possession with intent to distribute marijuana are invalid under *Apprendi v. New Jersey, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000)*, because a drug quantity was not alleged in [*24] the indictment or submitted to the jury. n11 Because Apprendi was issued approximately three months before Alanis's direct appeal was decided, the decision was applicable to Alanis's judgment of conviction. See *Griffith v. Kentucky, 479 U.S. 314, 328, 93 L. Ed. 2d 649, 107 S. Ct. 708 (1987)* (holding that new rules are retroactively [**26] applicable to cases "pending on direct review or not yet final"). But, as this issue is raised for the first time in his § 2255 motion, Alanis is required to show both cause and prejudice for failing to raise this contention on direct appeal. See *Shaid, 937 F.2d at 232*. Although the government's brief to this court does not mention Alanis's

procedural default regarding the Apprendi issue, we can raise the issue sua sponte because Alanis was given a reasonable opportunity to argue against imposition of the bar in district court. n12 See *United States v. Willis, 273 F.3d 592, 596-97 (5th Cir. 2001)*.

n11 In Apprendi, the Supreme Court held that due process requires that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *530 U.S. at 490*.

n12 In its motion to dismiss, the government asserted that Alanis had defaulted on his Apprendi claim.

[**27]

Alanis contended in district court that his appellate counsel was ineffective for failing to raise the Apprendi issue on direct appeal and that such ineffectiveness overcomes the procedural bar. n13 The Strickland standard also applies to the effectiveness of appellate counsel. See *Teague v. Scott, 60 F.3d 1167, 1173-74 (5th Cir. 1995)*. Alanis was sentenced on the CCE count to a concurrent sentence of equal length to the sentences challenged under Apprendi, and we have rejected each of Alanis's attacks on his CCE conviction and sentence. Consequently, he cannot show prejudice under Strickland. See *United States v. Tolliver, 61 F.3d 1189, 1223 & n.54 (5th Cir. 1995)* (holding that "dual sentencing is of no real consequence," and thus is not prejudicial under Strickland, when a defendant is serving a life sentence on an unchallenged count of conviction), vacated on other grounds sub. nom., *Sterling v. United States, 516 U.S. 1105, 133 L. Ed. 2d 834, 116 S. Ct. 900 (1996)*. Alanis's claim of ineffective-assistance-of-appellate-counsel therefore fails, and thus, his Apprendi challenge is procedurally barred.

n13 Thus, we granted him a COA on this issue as well.

[**28]

### IV. Conclusion

Accordingly, we VACATE the district court's judgment insofar as it denied relief on Alanis's claim of ineffective assistance of trial counsel regarding counsel's alleged failure to investigate and to challenge the warrantless search and REMAND this case to the district

court for further factual development concerning that claim. The district court's judgment regarding Alanis's remaining claims is AFFIRMED.

AFFIRMED IN PART; VACATED and REMANDED IN PART.

LEXSEE 165 FED. APPX. 360

**UNITED STATES OF AMERICA, Plaintiff-Appellee, versus DANIEL RAY HECKLER, Defendant-Appellant.**

**No. 04-10545 Summary Calendar**

## UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

*165 Fed. Appx. 360; 2006 U.S. App. LEXIS 2705*

**February 3, 2006, Filed**

**NOTICE:** [**1] RULES OF THE FIFTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** Appeal from the United States District Court for the Northern District of Texas. USDC No. 1:01-CR-81-1-C, USDC No. 1:03-CV-155-C.

**DISPOSITION:** VACATED and REMANDED.

**COUNSEL:** For UNITED STATES OF AMERICA, Plaintiff - Appellee: Amanda R Burch, US Attorney's Office, Northern District of Texas, Lubbock, TX.

DANIEL RAY HECKLER, Defendant - Appellant, Pro se, Big Spring, TX.

**JUDGES:** Before JOLLY, DAVIS and OWEN, Circuit Judges.

**OPINION:** [*361] PER CURIAM: *

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Daniel Ray Heckler appeals the denial of his *28 U.S.C. § 2255* motion in which he challenged his conviction and sentence after pleading guilty to conspiracy to commit odometer fraud and interstate transportation [**2] of fraudulent securities. A certificate of appealability was granted on the issue whether Heckler's counsel was ineffective for failing to file a notice of appeal. Heckler argues that he should be granted an out-of-time appeal because he expressly asked

counsel to file a notice of appeal and counsel failed to do so.

To demonstrate ineffective assistance of counsel based on a claim that counsel failed to file a notice of appeal, a defendant must show that the failure to file fell below an objective standard of reasonableness and that it prejudiced the defendant. See *Roe v. Flores-Ortega, 528 U.S. 470, 484, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000)*. Failing to file a notice when requested to do so can constitute deficient performance. *Id. at 477-78*. As to prejudice, the defendant need not demonstrate that he would have been able to raise meritorious issues on appeal. *Id. at 486*. Rather, he must demonstrate only that there is a reasonable probability that, but for counsel's failure, he would have appealed. Id. The record establishes that Heckler lost his right to appeal because his notice of appeal was untimely. Heckler's pro se notice of appeal [**3] demonstrates that he wanted to appeal. The affidavit that Heckler filed to counter the Government's motion to dismiss his direct appeal does not address whether he expressly told counsel that he wished to appeal. In the affidavit that Heckler submitted with the instant motion, he attested under penalty of perjury that after he received his sentence he immediately told counsel that he wanted to appeal. Contrary to the Government's argument, Heckler's two affidavits are not contradictory inasmuch as he could have told counsel of his desire to appeal and, after not being able to contact counsel, could have also attempted to file his own notice of appeal via his codefendant.

A district court may deny a *§ 2255* motion without conducting a hearing only "if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Bartholomew, 974 F.2d 39, 41 (5th Cir. 1992)*. The record does not conclusively show that Heckler is entitled to no relief on this claim. Contested factual issues may not be decided on the basis of affidavits alone [*362] unless the affidavits are supported by other evidence in the record.

*United States v. Hughes, 635 F.2d 449, 451 (5th Cir. 1981).* [**4] Given that the Government contests Heckler's claim, the denial of Heckler's *28 U.S.C. § 2255* motion is vacated and the case is remanded for an evidentiary hearing on Heckler's claim that he instructed counsel to file a notice of appeal.

VACATED and REMANDED.

LEXSEE 2006 U.S. APP. LEXIS 13685

UNITED STATES OF AMERICA, Plaintiff - Appellee, versus THERESA MARIE SQUILLACOTE, a/k/a Anne, a/k/a Resi, a/k/a Lisa Martin, a/k/a Margrit, a/k/a Margret, a/k/a Margit, a/k/a Mary Teresa Miller, a/k/a The Swan, a/k/a Margaret, a/k/a Schwan, a/k/a Tina, Defendant - Appellant.

No. 03-6648

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

2006 U.S. App. LEXIS 13685

August 26, 2005, Submitted
June 2, 2006, Decided

**NOTICE:** [*1] RULES OF THE FOURTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, District Judge. (CR-98-61; CA-02-537). *United States v. Squillacote, 221 F.3d 542, 2000 U.S. App. LEXIS 19184 (4th Cir. Va., 2000)*

**DISPOSITION:** AFFIRMED IN PART; VACATED AND REMANDED IN PART.

**COUNSEL:** Ty Cheung Gee, HADDON, MORGAN & FOREMAN, PC, Denver, Colorado, for Appellant. Ronald Leonard Walutes, Jr., OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

**JUDGES:** Before LUTTIG, * MOTZ, and TRAXLER, Circuit Judges.

> * Judge Luttig was a member of the original panel but did not participate in this decision. This opinion is filed by a quorum of the panel pursuant to *28 U.S.C. § 46(d)*.

**OPINION:** PER CURIAM:

Theresa Marie Squillacote appeals from the district court's denial of her *28 U.S.C. § 2255 (2000)* motion. She was convicted after a jury trial of conspiracy to transmit information relating to the national defense, attempted transmission of national defense information,

obtaining national defense information, and making false statements. We previously [*2] granted a certificate of appealability on Squillacote's claims that (1) the district court erred by failing to hold an evidentiary hearing on Squillacote's claim that she was denied her right to testify and (2) purported new evidence was sufficient to warrant a new trial. After further briefing by the parties, we vacate and remand with regard to the former claim and affirm the relevant portion of the district court's order on the latter claim.

First, Squillacote alleged that her attorneys prevented her from exercising her right to testify. Under *Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)*, in order to prove ineffective assistance of counsel on this claim, Squillacote must show both that her attorneys violated her right to testify and that her testimony had a "reasonable probability" of changing the outcome of her trial. The Government concedes that the question of whether Squillacote's right to testify was violated cannot be resolved without a hearing. However, the Government asserts that Squillacote's testimony would not have affected her trial.

After a thorough review of the record, we conclude that Squillacote has made a sufficient [*3] showing of potential prejudice to necessitate a hearing on both prongs of Strickland. See *Gray v. Spillman, 925 F.2d 90, 95 (4th Cir. 1991)* (holding that summary judgment may not be granted when there is opposing sworn testimony, even when one side's story is "hard to believe"). Squillacote's proposed testimony tells a story that, if believed, provides an explanation for the suspicious circumstances that caused the jury to convict her of conspiracy. In addition, should the jury believe her explanation of her earlier actions, it may also believe that she was not predisposed to espionage prior to the FBI's

sting operation, thus strengthening her entrapment defense. Thus, while expressing no opinion on the merits of Squillacote's ineffective assistance claim or the believability of her proposed testimony, we vacate the portion of the district court's order dismissing her claim that her attorneys violated her right to testify and remand for a hearing.

Second, Squillacote claims that she has newly discovered evidence proving her innocence. The new evidence is an affidavit from a German co-conspirator who refused to testify at trial but has since changed his mind. [*4] The Government attached to its informal brief copies of an out-of-court declaration by this witness and transcripts of two interrogations, all of which were admitted at trial. These documents provide the same innocent explanation for Squillacote's actions as the newly-discovered evidence. Squillacote does not dispute the characterization of the evidence admitted at trial, nor does she attempt to distinguish the evidence admitted from the proposed evidence.

Because it is undisputed that the substance of the witness's declaration was presented to the jury, we find that Squillacote cannot show that the new evidence would have resulted in her acquittal. While a live witness would obviously be more effective than a dry transcript, we cannot conclude that it would have altered the jury's verdict, especially in light of the absence of any argument by Squillacote on this point. See *4th Cir. R. 34(b)* (stating that claims not raised in informal brief are waived).

Based on the foregoing, we affirm the district court's denial of Squillacote's claim of newly discovered evidence, vacate the district court's denial of Squillacote's claim that she was denied her right to testify, and remand [*5] for a hearing. We grant Noell Peter Tin's motion to withdraw and deny his motion to be appointed CJA counsel as moot. We deny Squillacote's motion for oral argument, because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED IN PART; VACATED AND REMANDED IN PART

172 Fed. Appx. 587, *; 2006 U.S. App. LEXIS 7507, **

LEXSEE 172 FED. APPX. 587

**UNITED STATES OF AMERICA, Plaintiff-Appellee, versus RICK ALVAREZ, JR, Defendant-Appellant.**

**No. 04-40350 Summary Calendar**

**UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT**

*172 Fed. Appx. 587; 2006 U.S. App. LEXIS 7507*

**March 27, 2006, Filed**

**NOTICE:** [**1] RULES OF THE FIFTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** Appeal from the United States District Court for the Southern District of Texas. USDC No. 2:02-CV-431 USDC No. 2:01-CR-64-5.

**DISPOSITION:** VACATED AND REMANDED; MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF DENIED; MOTION FOR APPOINTMENT OF COUNSEL DENIED.

**COUNSEL:** UNITED STATES OF AMERICA, Plaintiff - Appellee: James Lee Turner, Assistant US Attorney, Mitchel Neurock, US Attorney's Office, Southern District of Texas, Houston, TX.

RICK ALVAREZ, JR, Defendant - Appellant, Pro se, Federal Correctional Complex, Forest City, AR.

**JUDGES:** Before HIGGINBOTHAM, BENAVIDES, and DENNIS, Circuit Judges.

**OPINION:** [*588] PER CURIAM: *

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Rick Alvarez, Jr., federal prisoner #98176-079, appeals [**2] the district court's denial of his *28 U.S.C. § 2255* motion to vacate, set aside, or correct sentence challenging his guilty-plea conviction and sentence for conspiracy to possess with intent to distribute more than five kilograms of cocaine. This court granted Alvarez a certificate of appealability on the issue of whether the [*589] district court erred by denying his claim that his counsel was ineffective for failing to appeal the sentence imposed without holding an evidentiary hearing. United States v. Alvarez, No. 04-40350 (5th Cir. Sept. 21, 2004) (unpublished). Alvarez argues that his counsel was ineffective because he did not appeal the sentence imposed after Alvarez requested that one be filed and that the district court erred by denying this claim without holding an evidentiary hearing.

We review a district court's denial of a *28 U.S.C. § 2255* motion without holding an evidentiary hearing for an abuse of discretion. *United States v. Cervantes, 132 F.3d 1106, 1110 (5th Cir. 1998)*. The failure to file a requested notice of appeal is ineffective assistance of counsel even without a showing that the appeal would have [**3] merit. *Roe v. Flores-Ortega, 528 U.S. 470, 477, 483, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000)*. Construing Alvarez's allegations liberally, see *Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)*, Alvarez presented a facially adequate claim of ineffective assistance of counsel that involved a contested issue of fact, and contrary to the district court's determination that Alvarez made no sworn statements to support his claim, Alvarez's § 2255 motion was made under penalty of perjury and was, therefore, competent evidence that the district court should have considered. *28 U.S.C. § 1746; Hart v. Hairston, 343 F.3d 762, 764 n.1 (5th Cir. 2003)*. As a result, the district court abused its discretion by denying Alvarez's claim based on affidavits without holding an evidentiary hearing. See *Brown v. Johnson, 224 F.3d 461, 466-67 (5th Cir. 2000); United States v. Hughes, 635 F.2d 449, 451 (5th Cir. Unit B 1981)*. The district court's denial of Alvarez's ineffective assistance of counsel claim is VACATED and this case is REMANDED to the district court for further

proceedings.

Alvarez additionally [**4] seeks leave to file a supplemental brief in which he seeks to raise, for the first time, the argument that his sentence was imposed in violation of the *Sixth Amendment* under *Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004)*, and *United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005)*. We will not consider this argument because it was raised for the first time in an appeal from the denial of a collateral attack upon Alvarez's sentence. See *Whitehead v. Johnson, 157 F.3d 384, 388 (5th Cir. 1998)*. Alvarez's motion for leave to file supplemental brief is DENIED. Alvarez's motion for appointment of counsel is also DENIED.

VACATED AND REMANDED; MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF DENIED; MOTION FOR APPOINTMENT OF COUNSEL DENIED.